**Hearing Date: January 24, 2024 at 10:00 a.m. (ET)**
**Objection Deadline: January 17, 2024 at 4:00 p.m. (ET)**
**Reply Deadline: January 21, 2024 at 4:00 p.m. (ET)**

**COOLEY LLP**
Evan Lazerowitz
Paul J. Springer
55 Hudson Yards
New York, NY 10001-2157
Tel: (212) 479-6000
Fax: (212) 479-6275
Email: elazerowitz@cooley.com
        pspringer@cooley.com


-and-


Robert L. Eisenbach III
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Tel: (415) 693-2000
Fax: (415) 693-2222
Email: reisenbach@cooley.com

*Counsel for GM Europe Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE 4D FACTORY, LLC, *et al.*[1] | ) No. 23-11618 (MEW) (Subchapter V |
| | ) Cases) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |

**NOTICE OF GM EUROPE LIMITED'S MOTION FOR ENTRY OF AN ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO NON-DEBTOR CENTILI LIMITED, OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM THE STAY**

---

[1] The Debtors in these Subchapter V cases, along with the last four digits of each Debtor's federal tax identification number, are 4D Factory Inc. (6770), and The 4D Factory, LLC (8935).

**PLEASE TAKE NOTICE** that GM Europe Limited ("GM Europe") has requested and obtained a hearing date on the annexed *GM Europe Limited's Motion for Entry of an Order Confirming that the Automatic Stay does not Apply to Non-Debtor Centili Limited, or, in the Alternative, Granting Relief from the Stay* ("Motion") before the Honorable Michael E. Wiles, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 617, One Bowling Green, New York, New York 10004-1408 on January 24, 2024 at 10:00 a.m. prevailing Eastern Time.

**PLEASE TAKE NOTICE** that the deadline for any responses to the Motion is January 17, 2024, at 4:00 p.m. prevailing Eastern Time.

**PLEASE TAKE NOTICE** that the deadline for GM Europe to reply to any timely filed responses is January 21, 2024, at 4:00 p.m. prevailing Eastern Time.

Dated: January 10, 2024
New York, New York

*/s/ Evan Lazerowitz*
**COOLEY LLP**
Evan Lazerowitz
Paul J. Springer
55 Hudson Yards
New York, NY 10001-2157
Tel: (212) 479-6000
Fax: (212) 479-6275
Email: elazerowitz@cooley.com
       pspringer@cooley.com

-and-

Robert L. Eisenbach III
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Tel: (415) 693-2000
Fax: (415) 693-2222
Email:   reisenbach@cooley.com

*Counsel for GM Europe Limited*

**Hearing Date: January 24, 2024 at 10:00 a.m. (ET)**
**Objection Deadline: January 17, 2024 at 4:00 p.m. (ET)**
**Reply Deadline: January 21, 2024 at 4:00 p.m. (ET)**

**COOLEY LLP**
Evan Lazerowitz
Paul J. Springer
55 Hudson Yards
New York, NY 10001-2157
Tel: (212) 479-6000
Fax: (212) 479-6275
Email: elazerowitz@cooley.com
      pspringer@cooley.com


-and-


Robert L. Eisenbach III
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Tel: (415) 693-2000
Fax: (415) 693-2222
Email: reisenbach@cooley.com

*Counsel for GM Europe Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE 4D FACTORY, LLC, *et al.*[2] | No. 23-11618 (MEW) (Subchapter V Cases) |
| Debtors. | (Jointly Administered) |

### GM EUROPE LIMITED'S MOTION FOR ENTRY OF AN ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO NON-DEBTOR CENTILI LIMITED, OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM THE STAY

---

[2]    The Debtors in these Subchapter V cases, along with the last four digits of each Debtor's federal tax identification number, are 4D Factory Inc. (6770), and The 4D Factory, LLC (8935).

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

JURISDICTION AND VENUE .............................................................................................. 2

BACKGROUND ..................................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

    A.    The Automatic Stay Does Not Apply To Centili................................................. 3

    B.    In the Alternative, Cause Exists To Lift The Stay. ............................................... 6

MEMORANDUM OF LAW ................................................................................................... 8

NOTICE ................................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bennett Funding Grp., Inc.*,
  212 B.R. 206 (2d Cir. 1997) ....................................................................6

*In re Bogdanovich*,
  292 F.3d 104 (2d Cir. 2002)......................................................................7

*In re Burger Boys, Inc.*,
  183 B.R. 682 (S.D.N.Y. 1994).....................................................................7

*In re Calpine Corp.*,
  365 B.R. 401 (S.D.N.Y. 2007)....................................................................4

*Chord Assocs. LLC v. Protech 2003-D, LLC*,
  No. 07-CV-5138 (JFB) (AKT), 2010 WL 1257874 (E.D.N.Y. Mar. 25, 2010)......................5

*Cortes v. Juquila Mexican Cuisine Corp.*,
  No. 17-CV-3942 (RER), 2020 WL 13550200 (E.D.N.Y. July 30, 2020) ................5

*In re Everton Aloysius Sterling*,
  543 B.R. 385 (Bankr. S.D.N.Y. 2015)........................................................6, 7

*In re FPSDA I, LLC*,
  No. 10-75439, 2012 WL 6681794 (Bankr. E.D.N.Y. Dec. 21, 2012) .......................6

*In re Keene Corp.*,
  171 B.R. 180 (Bankr. S.D.N.Y. 1994)...........................................................7

*In re Mazzeo*,
  167 F.3d 139 (2d Cir. 1999).....................................................................7

*In re Project Orange Assocs., LLC*,
  432 B.R. 89 (Bankr. S.D.N.Y. 2010) ...........................................................7

*Queenie v. Nygard Int'l*,
  321 F.3d 282 (2d Cir. 2003)...................................................................4, 5

*In re Schick*,
  232 B.R. 589 (Bankr. S.D.N.Y. 1999) ..........................................................6

*In re Sharma*,
  No. 12-14472 (SCC), 2014 WL 5714494 (Bankr. S.D.N.Y. Nov. 4, 2014)...........................5

*In re Sonnax Indus., Inc.*,
  907 F.2d 1280 (2d Cir. 1990)..............................................................6, 7, 8

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

11 U.S.C.
    § 101 .................................................................................................................1
    § 362(a)(1) ......................................................................................................4

28 U.S.C.
    § 157 .................................................................................................................2
    § 157(b)(2)(G) ................................................................................................2
    § 1334 ..............................................................................................................2

Bankruptcy Code
    Chapter 11 .......................................................................................................2
    § 105(a) ............................................................................................................2
    § 362 ........................................................................................................1, 2, 4, 6
    § 362(d)(1) ....................................................................................................2, 6

**Other Authorities**

Federal Rules of Bankruptcy Procedure 4001 ...................................................2

Local Bankruptcy Rule
    4001-1 .............................................................................................................2
    9013-1 .............................................................................................................2
    9013-1(a)..........................................................................................................8

GM Europe Limited ("GM Europe") hereby brings this motion (this "Motion") for entry of an order confirming that the automatic stay imposed pursuant to section 362 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") does not apply to collection of debt and the potential commencement of insolvency proceedings in the United Kingdom against non-debtor Centili Limited ("Centili"), or, in the alternative, granting GM Europe relief from the automatic stay, and for related relief, and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      GM Europe seeks an order confirming the automatic stay of section 362 of the Bankruptcy Code does not apply to Centili, or in the alternative, granting it relief from the automatic stay, to permit GM Europe to pursue collection efforts and file a winding up petition in the United Kingdom against Centili, a non-debtor entity.

2.      Centili owes GM Europe not less than €717,397.04 pursuant to an Electronic Digital Content Supply Agreement dated July 20, 2017, between Centili and Gamemine LLC (the "Agreement").  GM Europe acquired Gamemine LLC's interest, rights, and obligations under the Agreement pursuant to a novation agreement dated September 27, 2019.  GM Europe has demanded payment and reserved its rights to file a winding up petition against Centili based on Centili's apparent insolvency, but despite such demand, Centili has failed to pay GM Europe any of the €717,397.04.[3]

3.      GM Europe believes the automatic stay does not apply to actions by a non-debtor against another non-debtor.  However, after assertions to the contrary by counsel for the Debtors, and out of an abundance of caution, GM Europe brings this Motion seeking entry of an order confirming that the automatic stay does not apply to Centili and does not prevent GM Europe's

---

[3]   On October 25, 2023, GM Europe sent a letter to Centili advising that, as of that date, Centili owes GM Europe the amount of €717,397.04 pursuant to the Agreement.  A copy of that letter is attached hereto as Exhibit 1.

collection efforts against Centili or the possible filing of a winding up petition against Centili in the United Kingdom.

4.      Alternatively, if the Court were to conclude that the automatic stay is implicated, GM Europe seeks an order granting relief, pursuant to section 362(d)(1) or (d)(3) of the Bankruptcy Code, to permit GM Europe to proceed with its collection efforts against Centili, including a possible winding up petition.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

6.      The statutory predicate for the relief sought herein are sections 105(a) and 362 of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 4001-1 and 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules").

## BACKGROUND

7.      On October 10, 2023 (the "Petition Date"), 4D Factory Inc. and The 4D Factory, LLC filed a voluntary petitions for relief under subchapter V of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").

8.      Centili is not a debtor and instead is simply a wholly-owned subsidiary of debtor The 4D Factory, LLC (the "Debtor").  GM Europe is not a creditor of the Debtor; it is just an unsecured creditor of non-debtor Centili.  GM Europe does not hold any liens or security interests on or in any assets of the Debtor's bankruptcy estate and does not have a pledge from the Debtor of the Debtor's equity interest in Centili.

9.      On October 20, 2023, GM Europe received a letter (the "Debtor's October 20

Letter") from Debtor's counsel notifying GM Europe of the commencement of the Debtor's case and demanding that GM Europe cease and desist all collection efforts against Centili.  Ex. 2, Debtor's October 20 Letter.  In support of that demand, Debtor's counsel argued that the automatic stay in the Debtor's case applies to Centili, even though Centili has not filed for bankruptcy protection.  Ex. 2, Debtor's October 20 Letter.

10.    On November 9, 2023, in response to the October 20 Letter, the undersigned counsel for GM Europe sent Debtor's counsel a letter (the "GM Europe November 9 Letter") advising the Debtor of GM Europe's position that the automatic stay does not extend to non-debtor Centili and does not prevent GM Europe's efforts to collect from Centili the debt owed under the Agreement.  Ex. 3, GM Europe November 9 Letter.

11.    On November 15, 2023, the Debtor's counsel responded with a second letter (the "Debtor's November 15 Letter"), reiterating its position that the automatic stay extends to Centili and advising that, if GM Europe proceeded with its collection efforts and a winding up petition in the United Kingdom against non-debtor Centili, the Debtor would seek the Court's assistance in enjoining those efforts and also seek damages against GM Europe.  Ex. 4, Debtor's November 15 Letter.

12.    In light of the Debtor's assertions that the automatic stay applies to non-debtor Centili, and out of an abundance of caution, GM Europe brings this Motion.

## **ARGUMENT**

### A.    **The Automatic Stay Does Not Apply To Centili.**

13.    The automatic stay in the Debtor's case does not apply to prevent GM Europe from proceeding with its collection efforts and potential winding up petition against Centili because Centili is not a debtor.  The automatic stay under section 362 of the Bankruptcy Code applies to, among other things, "the commencement or continuation . . . of a judicial, administrative, or other

action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a)(1) (emphasis added). Indeed, "by its terms, [the automatic stay] applies only to debtors, property of the debtor, or property of the estate." *In re Calpine Corp.*, 365 B.R. 401, 408 (S.D.N.Y. 2007). Centili is not a debtor, and the automatic stay does not apply to Centili by the statute's terms.

14.     Although the Second Circuit has held that the automatic stay may be extended to protect a non-debtor, that is limited to a narrow set of circumstances, inapplicable here, where actions against the non-debtor would have an "immediate adverse economic impact for the debtor's estate." *Queenie v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003). In *Queenie*, the Second Circuit described three examples of when an action against a non-debtor would have an "immediate adverse economic impact" for the debtor's estate: "[1] a claim to establish an obligation of which the debtor is guarantor . . . [2] a claim against the debtor's insurer . . . and [3] actions where 'there is such identity between the debtor and the third party that the debtor may be said to be the real party defendant.'" *Id.* at 288.

15.     Here, GM Europe is not seeking to bring a claim to establish an obligation of which the Debtor is guarantor. In fact, GM Europe is not a creditor of the Debtor at all. For similar reasons, GM Europe is not seeking to bring a claim against the Debtor's insurer. Further, there is not such identity between the Debtor and Centili that the Debtor is the real party defendant as to GM Europe's claims against non-debtor Centili.

16.     Moreover, GM Europe believes Centili is insolvent based on Centili's publicly available financial statements (the "Centili Financial Statements") dated September 22, 2023, and Centili's failure to pay its debts as they come due, specifically including the €717,397.04 that Centili owes GM Europe under the Agreement. Ex. 5, Centili Financial Statements. The Centili

Financial Statements show that, as of December 31, 2022, Centili's total equity was <u>negative</u> €3,916,800, and that it lost €3,276,839 in 2022.  Ex. 5, Centili Financial Statements, p. 5.  That is particularly relevant because, here, the Debtor's interest in Centili is only in any residual value of Centili's equity, after Centili's creditors are first satisfied in full.  That means that the Debtor's interest in Centili is structurally subordinated to GM Europe's claims against Centili as a creditor.  The Debtor's interest in Centili is only as an equity holder, an interest that is junior to the rights of GM Europe as a creditor of Centili.  As such, GM Europe's collection actions against Centili will not have an immediate adverse economic impact on the estate's junior and negative equity interest, and the automatic stay should not be extended to non-debtor Centili.

17.    Additionally, in light of *Queenie*, several courts in the Second Circuit have considered whether the automatic stay necessarily extends to a debtor's non-debtor wholly-owned subsidiaries and have held that it does not.  *See, e.g.*, *Cortes v. Juquila Mexican Cuisine Corp.*, No. 17-CV-3942 (RER), 2020 WL 13550200, at *3 (E.D.N.Y. July 30, 2020) ("[W]ithout more, the fact that a non-debtor defendant is wholly owned by a debtor should not result in extension of the bankruptcy to that third party defendant."); *Chord Assocs. LLC v. Protech 2003-D, LLC*, No. 07-CV-5138 (JFB) (AKT), 2010 WL 1257874, at *8 (E.D.N.Y. Mar. 25, 2010) (finding "a bankruptcy filing by a parent does not automatically stay actions against a wholly owned subsidiary"); *In re Sharma*, No. 12-14472 (SCC), 2014 WL 5714494, at *11 (Bankr. S.D.N.Y. Nov. 4, 2014) (finding that automatic stay does not apply to companies wholly owned by the debtor because the automatic stay "only provides protection for the debtor[,] except under extraordinary circumstances"); *In re FPSDA I, LLC*, No. 10-75439, 2012 WL 6681794, at *8 (Bankr. E.D.N.Y. Dec. 21, 2012), as corrected (Dec. 26, 2012) ("in keeping with the principle that extending the stay to non-debtors is *extraordinary* relief, the party seeking extension of the stay must put forth real

evidence demonstrating an actual impact upon, or threat to, the reorganization efforts if the stay is not extended") (emphasis in original).

18.    The fact that Centili is a wholly-owned subsidiary of the Debtor does not mean that automatic stay extends to Centili.  Because GM Europe's collection actions and potential winding up petition against Centili would not have an immediate adverse economic impact on the Debtor's ownership interest in Centili, which is *already* subordinate to satisfaction of Centili's creditors, the automatic stay does not prohibit GM Europe from taking such collection actions against Centili.

**B.    In the Alternative, Cause Exists To Lift The Stay.**

19.    Even if the Court were to determine that the automatic stay does apply to Centili, cause exists to lift the stay.

20.    Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . . for cause."  11 U.S.C. § 362(d)(1).  However, section 362 does not define "cause."  *Id.*  Instead, courts must determine whether "cause" exists on a case-by-case basis.  *In re Everton Aloysius Sterling*, 543 B.R. 385, 393 (Bankr. S.D.N.Y. 2015); *In re Bennett Funding Grp., Inc.*, 212 B.R. 206, 211 (2d Cir. 1997).

21.    Specifically, "where a party seeks stay relief to commence or continue litigation in another forum," bankruptcy courts in the Second Circuit consider the well-established list of twelve factors set forth in the *Sonnax* case to determine whether "cause" exists to lift the stay.  *In re Schick*, 232 B.R. 589, 600 (Bankr. S.D.N.Y. 1999).  The *Sonnax* factors are: (a) whether relief would result in a partial or complete resolution of the issues; (b) lack of connection with or interference with the bankruptcy case; (c) whether the other proceeding involves the debtor as a fiduciary; (d) whether a specialized tribunal with the necessary expertise has been established to

6

hear the cause of action; (e) whether the debtor's insurer has assumed full responsibility for defending it; (f) whether the action primarily involves third parties; (g) whether litigation in another forum would prejudice the interests of other creditors; (h) whether the judgment claim arising from the other action is subject to equitable subordination; (i) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (j) the interests of judicial economy and the expeditious and economical resolution of litigation; (k) whether the parties are ready for trial in the other proceeding; and (l) impact of the stay on the parties and the balance of harms. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

22.     A movant need not satisfy every one of the twelve factors. *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999); *In re Burger Boys, Inc.*, 183 B.R. 682, 688 (S.D.N.Y. 1994); *Sterling*, 543 B.R. at 393; *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002).  A court should only consider the factors "that are relevant to the particular case, and does not need to give each factor equal weight." *In re Project Orange Assocs., LLC*, 432 B.R. 89, 104 (Bankr. S.D.N.Y. 2010) (applying *Sonnax* factors and granting relief from the stay).  The court should weigh the particular circumstances of each case to reach the solution that is most just to all parties. *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).

23.     Here, cause exists to lift the automatic stay, to the extent the Court were to hold it applied at all, based on the relevant *Sonnax* factors.  First, GM Europe's collection efforts and potential winding up petition against Centili lacks a connection to or interference with the Debtor's bankruptcy case for the reasons articulated above.  Next, any action by GM Europe against Centili would only involve third parties (GM Europe and Centili) and would not name the Debtor as a party to a proceeding.  Further, the interests of the Debtor's creditors would not be prejudiced by GM Europe's actions because the Debtor has only an equity interest that is subordinate to the

claims of Centili's creditors.  Finally, Centili is unable to pay its debts as they become due and otherwise appears to be insolvent based on public financial statements.  Thus, although GM Europe would be substantially harmed by being prevented from seeking payment from Centili, a non-debtor, the Debtor's creditors would not be harmed because the Debtor's equity interest in Centili is essentially worthless.

24.     Accordingly, the *Sonnax* factors weigh in favor of granting GM Europe relief from the stay, and GM Europe respectfully requests the Court to find that cause exists to lift the stay.

## MEMORANDUM OF LAW

25.     Pursuant to Rule 9013-1(a) of the Local Bankruptcy Rules, no separate memorandum of law is required.

## NOTICE

26.     Notice has been provided to: (a) attorneys for the Debtor; (b) the Office of the U.S. Trustee; and (c) all parties who have formally appeared and requested notice in this bankruptcy case.  In light of the nature of the relief requested herein, GM Europe submits that no other or further notice is required.

WHEREFORE, for the foregoing reasons, GM Europe requests that the Court confirm that the automatic stay does not apply to Centili or prevent GM Europe's collection efforts and the potential filing of a winding up proceeding against Centili, and grant such other relief as is just and necessary.

*[Remainder of page intentionally left blank]*

8

Dated: January 10, 2024
New York, New York

*/s/ Evan Lazerowitz*

**COOLEY LLP**
Evan Lazerowitz
Paul J. Springer
55 Hudson Yards
New York, NY 10001-2157
Tel: (212) 479-6000
Fax: (212) 479-6275
Email: elazerowitz@cooley.com
        pspringer@cooley.com

-and-

Robert L. Eisenbach III
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Tel: (415) 693-2000
Fax: (415) 693-2222
Email:    reisenbach@cooley.com

*Counsel for GM Europe Limited*

Exhibit 1



Date        25 October 2023
Our Ref     GMP/JLO
            DocID 20509423-1

**For the attention of the director**
Centili Limited
2 New Bailey
6 Stanley Street
Salford
Greater Manchester
M3 5GS

By hand

**NOTICE OF INTENTION TO PRESENT A WINDING UP PETITION**

Horton House
Exchange Flags
Liverpool L2 3YL

**T**: 0151 600 3000
**F**: 0151 227 3185
**DX**: 14118 Liverpool

Dear Centili Limited

**Our client: GM Europe Limited**

**Outstanding debt of €717,397.04**

1.  We act for GM Europe Limited. We are instructed that you owe our client €717,397.04.

2.  The outstanding sum comprises your liability to our client pursuant to an Electronic Digital Content Supply Agreement dated 20 July 2017 between you and Gamemine LLC ("**the Agreement**"). Gamemine LLC subsequently transferred its interests, rights and obligations under the Agreement to our client pursuant to a Novation Agreement dated 27 September 2019 ("**the Novation**"), to which you are a party. Copies of the Agreement and the Novation are enclosed.

    **Invoice debt**

3.  The Agreement states (references to the COMPANY should be read as references to our client, in accordance with the terms of the Novation):

    "*2.2. The COMPANY's responsibility is to:*

    *6. supply EDC to CENTILI at fees as determined in this Agreement within the Schedule 1 – COMPANY Fees;*"

    and

    "*2.3. CENTILI shall:*

    *6. transfer the COMPANY Fees for the purchased EDC to the COMPANY as determined in this Agreement;*"

    and

    "*2.4. The payments of the COMPANY Fees shall be executed as set forth within the Schedule 1 – COMPANY Fees.*"

Authorised and Regulated by the
Solicitors Regulation Authority.

SRA No. 420634

Brabners LLP is a limited liability
partnership registered in England
and Wales (Number OC309501)
whose registered address is at
Horton House Exchange Flags
Liverpool L2 3YL.  A list of members
is available at each office.  Members
of Brabners LLP will be referred to
as partners.

brabners.com

and

SCHEDULE 1 (relevant parts only)

"*2. Centili shall pay to the COMPANY the COMPANY Fees calculated as a percentage of fees paid by End-Users at the agreed price-points.*"

"*2.5.A.*

*COMPANY shall invoice CENTILI on a monthly basis for the COMPANY Fees for the reference month based on the Settlement Data. Reference month is the calendar month for which settlement is being reconciled. Settlement Data is due from CENTILI to the COMPANY within fifteen (15) days from the receipt of the amounts net of VAT from the Network Operators or CENTILI Partners.*

*The COMPANY will submit an invoice to CENTILI as soon as possible after the receipt of Settlement Data and shall clearly mark on the invoice that it is related to the supply of Electronic Digital Content.*

*The payment will be due within thirty (30) days of receipt of the invoice.*"

4. Pursuant to the terms of the Agreement, our client has issued various invoices to you during the period 4 April 2022 to 13 September 2023. The sum of €644,749.63 remains outstanding pursuant to those invoices ("**the Invoice Debt**"). A breakdown of the outstanding invoices is enclosed. By those invoices, and subsequent correspondence sent by our client, it brought the outstanding sums to your attention and required you to pay the Invoice Debt. In default of the Agreement, you have failed to make payment to our client within 30 days of receipt of each of the relevant invoices (or at any time since).

5. We have had sight of email correspondence (copies enclosed) passing between you and our client regarding the Invoice Debt which demonstrates that when our client requested payment:

   (a) you informed our client that Centili Limited was in the process of being restructured and a new shareholder was taking over the company who was obligated to inject cash into the company, to cover its liabilities. We understand that new shareholder is now in place and yet you have still failed to discharge the Invoice Debt due to our client;

   (b) you informed our client that the company was having cash flow difficulties (due to issues with third party payments) and requested further time to pay the Invoice Debt to our client;

   (c) a payment plan was proposed by you on 11 October 2022 (in respect of the invoices outstanding at that time) which was agreed by our client on 12 October 2022. We are instructed that you have failed to comply with that payment plan;

   (d) at no point have the sums due to our client under the Invoice Debt been disputed by you in any of the emails from you to our client. Indeed, you have acknowledged throughout that the outstanding invoices are due and owing to our client. Filip Milisavljevic stated in his email to Daniel Galea of our client on 13 September 2023 that "*GM Europe (Gamemine) is the first one on Centili payment list with highest priority, not only when it comes to total outstanding amount, but future cooperation plan between Centili & Gamemine as well.*"

6. The above matters (i.e., the restructuring of the company and the cash flow difficulties) do not amount to a legitimate reason to withhold payment of the Invoice Debt to our client.



7.  In the circumstances the Invoice Debt is now due and payable. We can see no reason why you should not discharge it in full without further delay. We are not aware of any genuine dispute as to the amount of the Invoice Debt or your liability to pay it, nor any basis on which such a dispute could be advanced. Indeed, it is clear that you admit that the Invoice Debt is due and owing in the amounts invoiced to you by your client.

**The Income Debt**

8.  In addition to the Invoice Debt, you are further indebted to our client in the sum of €72,647.41 in respect of accrued income ("**the Income Debt**"). We enclose a breakdown of that sum. Those sums have not yet been invoiced to you by our client as our client has not received the necessary statements from you.

9.  The Income Debt is now due and payable, and our client requires you to discharge the sum in addition to the Invoice Debt. We can see no reason why you should not discharge it in full without further delay. We are not aware of any genuine dispute as to the amount of the Income Debt or your liability to pay it, nor any basis on which such a dispute could be advanced. If, however, you dispute the amount of the Income Debt or your liability to pay it, we invite you to set out the grounds of any such dispute as a matter of urgency.

**Payment Details**

10. Our client has been more than patient in awaiting payment in this matter. Our client's patience has, however, now expired and payment is now due immediately if further action is to be avoided.

11. Please pay the Invoice Debt and the Income Debt ("together **the Debt**") without further delay and in cleared funds to our client to the bank account details set out below:

    Correspondent Bank Name: J.P. Morgan SE

    Correspondent Bank SWIFT: CHASDEFX

    Beneficiary Bank Name: J.P. Morgan SE – Luxembourg Branch

    Beneficiary Bank SWIFT: CHASLULX

    Ultimate Beneficiary Name: GM Europe Limited

    Ultimate Beneficiary Account: 6550194859

    Ultimate Beneficiary IBAN: LU970670006550194859

    Currency for payment: EUR

12. If our client has not received payment of the Debt by close of business on 3 November 2023, we can only assume that you are insolvent as you cannot pay your debts as they fall due for the purposes of section 123(1)(e) of the Insolvency Act 1986. In that case, we reserve our client's rights entirely to take appropriate further action, which may include the presentation of a winding up petition against you.

**Brabners**

13. Our client also reserves its rights entirely to claim interest and late payment compensation in respect of the outstanding sums, in the event that the Debt is not paid by close of business on 3 November 2023.

14. We trust that you understand the consequences of a winding up petition and the effect that it will have on your ability to trade. If you do not, you should seek urgent legal advice. We would also point out that, in the event that a winding up petition is presented to the court, the petition will be advertised in the London Gazette and will thus warn others of your inability to pay your debts as and when they fall due.

15. Furthermore, you are on notice that upon a winding up order being made our client will seek the appointment of an Insolvency Practitioner who will investigate the affairs and conduct of the company and its directors. You should be aware that such investigations can lead to directors' disqualification orders and directors being made personally liable to creditors for company debts.

16. Please do not ignore this letter as your failure to respond constructively will result in further action being taken against you without further notice.

17. This letter is written without prejudice to all other rights and remedies as may be available to our client against your company, its directors and/or its owners.

Yours faithfully

**Brabners LLP**

Graeme McParland
Solicitor
**DD:** 0151-600-3177
**Mobile:** +447741668943
**Email:** graeme.mcparland@brabners.com

Enc(s)

20509423-1

## Exhibit 2

# SPENCE LAW OFFICE, P.C.

**55 LUMBER ROAD**
**SUITE 5**
**ROSLYN, NY 11576**
**TEL: 516-336-2060  FAX: 516-605-2084**

October 20, 2023

**BY EMAIL**

Flaviu Rus
Gamemine LLC
Gamemine Europe Limited
439 Carrol Canal
Venice, CA 90291

> Re:    ***The 4D Factory, LLC***
> **Chapter 11**
> **Case No. 23-11619 MEW**

Dear Mr. Rus:

I am counsel for The 4D Factory LLC. The Debtor filed a bankruptcy case on October 10, 2023 in the Bankruptcy Court for the Southern District of New York. Notice of the bankruptcy filing is attached. The bankruptcy filing triggers an automatic stay applicable to all actions against the Debtor or its assets. Accordingly, please cease and desist from all collection actions against the Debtor's wholly owned subsidiary, Centili Limited. Further, your threats of filing a petition for dissolution of Centili Limited in the UK would certainly be imprudent and risk a holding by the Bankruptcy Court that you and your company have violated the automatic stay.

While Centili Limited has not filed for bankruptcy protection, the stay is also applicable to its wholly owned non-debtor subsidiaries, including but not limited to Centili Limited. The caselaw in the Second Circuit Court of Appeal supports this position. The Debtor relies on both Section 362(a)(1) and Section 362(a)(3) to support application of the automatic stay to the non-debtor entities. "Section 362(a)(1) provides that a bankruptcy petition "operates as a stay" of "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1). Additionally, Section 362(a)(3) will stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. § 362(a)(3)." In re Residential Capital, LLC, 529 Fed.Appx. 69, 70 (2nd Cir. 2013). "The automatic stay can apply to non-debtors, … when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." Id. at 71 (citing Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d Cir.2003)). In *Queenie*, for example, the Second Circuit held that the automatic stay applied to proceedings against a debtor's **wholly owned corporation**. Id. at 287.

Flaviu Rus
October 20, 2023
Page 2

_____

       Certainly, the threat of an involuntary dissolution of Centili Limited, the Debtor's main operating entity and most valuable asset, would constitute an immediate economic consequence for the estate and the Debtor's reorganization and is clearly the type of action that the automatic stay is designed to prevent.  An involuntary dissolution filing against Centili Limited when the company is executing strategic corporate and capital raising activities would cause serious damages in the millions if not tens of millions of dollars.  You are now on notice of not only the potential for violation of the automatic stay, but also the economic damages which will occur in the event you choose to proceed on your threats.  My client will seek not only to enjoin any such conduct, but to charge the needless costs to your account.

       That said, you have received assurances that Centili Limited intends to execute whatever transaction is necessary to provide the cash flow to satisfy all operational needs including servicing obligations to vendors.  Centili Limited is not in an insolvency proceeding for this reason and has no intention of filing for bankruptcy protection in the UK or the United States unless forced to do so.  After directing Centili to make payments on prior invoices, its Director has offered a call to inform you of the activities that will prescribe the timetable to satisfy outstanding obligations.  We again invite the principals to discuss the matter in good faith and strongly advise against further escalation.

       Should you or your counsel have any questions, please contact the undersigned.

       All rights are reserved on behalf of my client.

       Sincerely,

       Robert J. Spence

Attachment (1)

Exhibit 3



Robert L. Eisenbach III                                                              Via E-Mail
T: +1 415 693 2094
reisenbach@cooley.com

November 9, 2023

Robert J. Spence
Spence Law Office, P.C.
55 Lumber Road, Suite 5
Roslyn, NY  11576

**Re:    Centili Limited**

Dear Mr. Spence:

We are counsel for GM Europe Limited and write in response to your letter to Flaviu Rus dated October 20, 2023.

The letter asserts that because The 4D Factory LLC filed bankruptcy the automatic stay extends to Centili Limited, a separate entity that has not filed bankruptcy. However, the automatic stay of Section 362 of the Bankruptcy Code stays collection efforts "against the debtor" in bankruptcy, not against a debtor's non-debtor subsidiaries and affiliates. Centili Limited is not a debtor in bankruptcy and the automatic stay in favor of The 4D Factory LLC does not operate to prevent GM Europe Limited's efforts to collect from Centili Limited the debt owed to it by Centili Limited.

GM Europe Limited reserves all of its rights.

Very truly yours,

Robert L. Eisenbach III

RLE:iw

cc via E-Mail:    Graeme McParland
                 Ante Ukalovic
                 Filip Milisavljevic

293875019

Exhibit 4

# SPENCE LAW OFFICE, P.C.

**55 LUMBER ROAD**
**SUITE 5**
**ROSLYN, NY  11576**
**TEL: 516-336-2060  FAX: 516-605-2084**

November 15, 2023

<u>**BY EMAIL**</u>

Robert L. Eisenbach III, Esq.
Cooley LLP
3 Embarcadero Center 20th Floor
San Francisco, CA 94111-4004
Email: reisenbach@cooley.com

Re:    ***The 4D Factory, LLC***
       **Chapter 11**
       **Case No. 23-11619 MEW**

Dear Mr. Eisenbach,

As you know, I am counsel to The 4D Factory LLC ("4D"), the owner of all of the issued and outstanding equity in Centili Limited ("Centili").  I am in receipt of your letter dated November 9 2023 on behalf of your client GM Europe Limited ("Gamemine").  I note that you did not provide any independent legal authority for your client's position in your letter nor did you address the SDNY cases I cited in my letter.  If you reviewed these cases, and others of similar precedent, you would find that the courts in the Second Circuit disagree with your conclusion.  At the very least, in the Second Circuit, the stay has been extended to assets and entities that are essential to the reorganization process.  Centili certainly qualifies as such an asset to the 4D estate and is essential to its reorganization process.  In my experience, the cautious approach creditors typically take is to request relief from the automatic stay rather than risk exposure to damages and worse for violating the automatic stay.  Regardless, the issue of whether the stay applies or is extended to Centili is ultimately left to the Bankruptcy Court.  If your client follows through on its threats, we will ask the Court for its assistance in enjoining such conduct and seek appropriate damages.  If your client instead proceeds with caution and requests relief from the stay before it acts, then the Bankruptcy Court will also decide the issues without the possibility of damages for violation of the stay.   Either way, what is certain if your client follows through on its threats, is that it will cause the parties to needlessly expend their time and energy.

The real point of my letter (and my subsequent email to Mr. McParland on 11/3/23 – attached) was not to get mired in the applicability of the stay, but rather to open the lines of communication to let your client project recovery from the process of the global restructuring of 4D and its subsidiaries.  There is more to be gained from our mutually beneficial relationship

Robert L. Eisenbach III, Esq.
November 15, 2023
Page 2
_____

than proceeding with an ill-advised wind-up.   The workable payment plan will not happen overnight (note, i.e., the email from your client demanding immediate payment sent subsequent to your letter) or allow for agreements or immediate payments in favor of one creditor over all others; however, that plan is in process to be submitted for Court approval in 30-40 days. Whereas, your client's threats, if acted on, will prove completely fruitless and costly.   At best, your client gets nothing in a wind-up except a claim that would then be pooled with many others <u>and</u> faces a potential claim for damages.  A "scorched earth" approach will accomplish nothing for your client or mine.

Centili has no intention of filing for bankruptcy protection, nor should it.  It is on the cusp of an infusion of capital and a merger that will solve its cash flow concerns and allow it to resume making payments.  With the exception of Gamemine, Centili is in communication with all of its large creditors who are on-board with Centili's strategy and plan.   As set forth in my letter and follow-up email, my client is ready and willing to discuss this matter by phone directly with your client's principal(s), in order to work out a path forward that is mutually agreeable.

Should you or your counsel have any questions, please contact the undersigned.

All rights are reserved on behalf of my client.


Sincerely,

Robert J. Spence


Attachment (1)

Graeme McParland, Esq. (Graeme.McParland@brabners.com)
Karl Clowry, Esq. (karl.clowry@addleshawgoddard.com)

## Exhibit 5

**Company Registration No. 07911314 (England and Wales)**

**CENTILI LIMITED**

**ANNUAL REPORT AND UNAUDITED FINANCIAL STATEMENTS**

**FOR THE YEAR ENDED 31 DECEMBER 2022**



TUESDAY

*ACCU0ZHT*

A29        26/09/2023        #63
COMPANIES HOUSE

138688-B-2022

**CENTILI LIMITED**

**COMPANY INFORMATION**

---

| | | |
|---|---|---|
| **Director** | Courtney Joseph Javarone | (Appointed 13 January 2023) |
| **Company number** | 07911314 | |
| **Registered office** | 2 New Bailey | |
| | 6 Stanley Street | |
| | Salford | |
| | Greater Manchester | |
| | United Kingdom | |
| | M3 5GS | |
| **Accountants** | Suntera Accounting & Tax Limited | |
| | PO Box 227 | |
| | Peveril Buildings | |
| | Peveril Square | |
| | Douglas | |
| | Isle of Man | |
| | IM99 1RZ | |

**CENTILI LIMITED**

**CONTENTS**

|                                      | Page    |
|--------------------------------------|---------|
| Director's report                    | 1 - 2   |
| Accountants' report                  | 3       |
| Profit and loss account              | 4       |
| Balance sheet                        | 5       |
| Statement of changes in equity       | 6       |
| Notes to the financial statements    | 7 - 13  |

**CENTILI LIMITED**

**DIRECTOR'S REPORT**

**FOR THE YEAR ENDED 31 DECEMBER 2022**

The director presents her annual report and financial statements for the year ended 31 December 2022.

**Principal activities**
The principal activity of the company continued to be that of payment platform provider.

**Director**
The director who held office during the year and up to the date of signature of the financial statements was as follows:

| | |
|---|---|
| Courtney Joseph Javarone | (Appointed 13 January 2023) |
| S C Turner | (Resigned 13 January 2023) |
| R Orton | (Resigned 13 January 2023) |

**Post reporting date events**
No significant post Covid-19 effects can be seen in the UK and globally, but Ukrainian war still has economic and business impacts. Management does not expect any further reflections on the business when it comes to pandemic situation, but Ukrainian war disabled the company to cooperate with partners from Russia and no similar business activities are anticipated in the future.

**Future developments**
Former shareholder decided to sell Centili Ltd to 4D Factory, investment fund from the USA. The company was acquired in January 2023 with new strategy and initiatives to be implemented. Major focus on settling all outstanding liabilities and having traffic being turned on. Besides regaining the trust of old merchants and renewing cooperation with clients who reduced their traffic flow with Centili, particular focus on offering PaaS (Platform as a Service) to clients and working on ADM (B2C). Together with cost optimization initiatives, which will not jeopardize company's operations, this will turn the negative trend of recording net losses into successful and sustainable business model.

**Statement of director's responsibilities**
The director is responsible for preparing the annual report and the financial statements in accordance with applicable law and regulations.

Company law requires the director to prepare financial statements for each financial year. Under that law the director has elected to prepare the financial statements in accordance with United Kingdom Generally Accepted Accounting Practice (United Kingdom Accounting Standards and applicable law). Under company law the director must not approve the financial statements unless she is satisfied that they give a true and fair view of the state of affairs of the company and of the profit or loss of the company for that period. In preparing these financial statements, the director is required to:

- select suitable accounting policies and then apply them consistently;
- make judgements and accounting estimates that are reasonable and prudent;
- prepare the financial statements on the going concern basis unless it is inappropriate to presume that the company will continue in business.

The director is responsible for keeping adequate accounting records that are sufficient to show and explain the company's transactions and disclose with reasonable accuracy at any time the financial position of the company and enable them to ensure that the financial statements comply with the Companies Act 2006. She is also responsible for safeguarding the assets of the company and hence for taking reasonable steps for the prevention and detection of fraud and other irregularities.

**CENTILI LIMITED**

**DIRECTOR'S REPORT (CONTINUED)**

**FOR THE YEAR ENDED 31 DECEMBER 2022**

**Going concern**

The statements are prepared on the going concern basis. Having in mind all future planned developments and what initiatives are in the pipeline, management of the company has positive expectations when it comes to future operations and sustainability. However, the management is aware that company recorded significant loss for the period under review and that current management reports are reflecting losses as well. The new shareholder initiated restructuring process; thus the main part of the previous management was laid off and all operational expenses have been optimized where it was possible. This was result of close monitoring of cash burn and thorough cost review. The company will start new fiscal year with clean structure, which will be able to deliver defined targets and results. Additionally, the ultimate beneficial owner has confirmed that they will continue to support the company for the foreseeable future including a period of twelve months from signing of these financial statements.

**Small companies exemption**

This report has been prepared in accordance with the provisions applicable to companies entitled to the small companies exemption.

On behalf of the board

Courtney Joseph Javarone
**Director**

Date: .................................... 22 September, 2023



**CENTILI LIMITED**

**ACCOUNTANTS' REPORT TO THE BOARD OF DIRECTORS ON THE PREPARATION OF THE
UNAUDITED STATUTORY FINANCIAL STATEMENTS OF CENTILI LIMITED FOR THE YEAR ENDED 31
DECEMBER 2022**

In order to assist you to fulfil your duties under the relevant Companies Act, we have prepared for your approval the
financial statements of Centili Limited for the year ended 31 December 2022 set out on pages 4 to 13 from the
company's accounting records and from information and explanations you have given us.

As a member of the Institute of Chartered Accountants in England and Wales (ICAEW) Practice Assurance
Scheme, we are subject to its ethical and other professional requirements which are detailed at https://
www.icaew.com/regulation

This report is made solely to the Board of Directors of Centili Limited, as a body, in accordance with the terms of our
engagement letter. Our work has been undertaken solely to prepare for your approval the financial statements of
Centili Limited and state those matters that we have agreed to state to the Board of Directors of Centili Limited, as a
body, in this report in accordance with ICAEW Technical Release 07/16 AAF. To the fullest extent permitted by law,
we do not accept or assume responsibility to anyone other than Centili Limited and its Board of Directors as a body,
for our work or for this report.

It is your duty to ensure that Centili Limited has kept adequate accounting records and to prepare statutory financial
statements that give a true and fair view of the assets, liabilities, financial position and loss of Centili Limited. You
consider that Centili Limited is exempt from the statutory audit requirement for the year.

We have not been instructed to carry out an audit or a review of the financial statements of Centili Limited. For this
reason, we have not verified the accuracy or completeness of the accounting records or information and
explanations you have given to us and we do not, therefore, express any opinion on the statutory financial
statements.

*Suntera Accounting & Tax Limited*

22 September 2023

**Suntera Accounting & Tax Limited**

Suntera Accounting & Tax Limited, a company registered in the Isle of Man (001316V)

at Peveril Buildings, Peveril Square, Douglas, Isle of Man, IM99 1RZ is a member of the ICAEW Practice Assurance Scheme and a member of Russell

Bedford International - a global network of independent professional services firms. A member of the Suntera Global group of companies.

**CENTILI LIMITED**

**PROFIT AND LOSS ACCOUNT**

**FOR THE YEAR ENDED 31 DECEMBER 2022**

|  | Notes | 2022<br>€ | 2021<br>€ |
|---|---|---|---|
| **Turnover** | 3 | 524,186 | 2,469,005 |
| Administrative expenses | | (3,793,626) | (4,430,266) |
| **Loss before taxation** | | (3,269,440) | (1,961,261) |
| Tax on loss | | (7,399) | (81,923) |
| **Loss for the financial year** | | (3,276,839) | (2,043,184) |

The profit and loss account has been prepared on the basis that all operations are continuing operations.

**CENTILI LIMITED**

**BALANCE SHEET**

**AS AT 31 DECEMBER 2022**

| | Notes | 2022 € | € | 2021 € | € |
|---|---|---|---|---|---|
| **Fixed assets** | | | | | |
| Investments | 8 | | 30,847 | | 30,847 |
| **Current assets** | | | | | |
| Debtors | 9 | 4,225,568 | | 6,753,357 | |
| Cash at bank and in hand | | 96,068 | | 176,900 | |
| | | 4,321,636 | | 6,930,257 | |
| **Creditors: amounts falling due within one year** | 10 | (8,269,283) | | (7,601,065) | |
| **Net current liabilities** | | | (3,947,647) | | (670,808) |
| **Net liabilities** | | | (3,916,800) | | (639,961) |
| **Capital and reserves** | | | | | |
| Called up share capital | 11 | | 5,342,260 | | 5,342,260 |
| Profit and loss reserves | | | (9,259,060) | | (5,982,221) |
| **Total equity** | | | (3,916,800) | | (639,961) |

For the financial year ended 31 December 2022 the company was entitled to exemption from audit under section 477 of the Companies Act 2006 relating to small companies.

The director acknowledges her responsibilities for complying with the requirements of the Companies Act 2006 with respect to accounting records and the preparation of financial statements.

The members have not required the company to obtain an audit of its financial statements for the year in question in accordance with section 476.

These financial statements have been prepared in accordance with the provisions applicable to companies subject to the small companies regime.

The financial statements were approved by the board of directors and authorised for issue on ........22 Sept., 2023........ and are signed on its behalf by:

....(signature)....

Courtney Joseph Javarone
**Director**

**Company Registration No. 07911314**

**CENTILI LIMITED**

**STATEMENT OF CHANGES IN EQUITY**

**FOR THE YEAR ENDED 31 DECEMBER 2022**

| | Share capital | Profit and loss reserves | Total |
|---|---|---|---|
| | € | € | € |
| **Balance at 1 January 2021** | 5,342,260 | (3,939,037) | 1,403,223 |
| **Year ended 31 December 2021:** | | | |
| Loss and total comprehensive income for the year | - | (2,043,184) | (2,043,184) |
| **Balance at 31 December 2021** | 5,342,260 | (5,982,221) | (639,961) |
| **Year ended 31 December 2022:** | | | |
| Loss and total comprehensive income for the year | - | (3,276,839) | (3,276,839) |
| **Balance at 31 December 2022** | 5,342,260 | (9,259,060) | (3,916,800) |

**CENTILI LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**

**FOR THE YEAR ENDED 31 DECEMBER 2022**

**1    Accounting policies**

**Company information**

Centili Limited is a private company limited by shares incorporated in England and Wales. The registered office is 2 New Bailey, 6 Stanley Street, Salford, Greater Manchester, United Kingdom, M3 5GS.

**1.1    Accounting convention**

These financial statements have been prepared in accordance with FRS 102 "The Financial Reporting Standard applicable in the UK and Republic of Ireland" ("FRS 102") and the requirements of the Companies Act 2006 as applicable to companies subject to the small companies regime. The disclosure requirements of section 1A of FRS 102 have been applied other than where additional disclosure is required to show a true and fair view.

The financial statements are prepared in euros, which is the functional currency of the company. Monetary amounts in these financial statements are rounded to the nearest €.

The financial statements have been prepared under the historical cost convention. The principal accounting policies adopted are set out below.

The company has taken advantage of the exemption under section 405 of the Companies Act 2006 not to prepare consolidated accounts on the basis that the subsidiaries are not material for the purpose of giving a true and fair view. The financial statements present information about the company as an individual entity and not about its group.

**1.2    *Going concern***

The statements are prepared on the going concern basis. Having in mind all future planned developments and what initiatives are in the pipeline, management of the company has positive expectations when it comes to future operations and sustainability. However, the management is aware that company recorded significant loss for the period under review and that current management reports are reflecting losses as well. The new shareholder initiated restructuring process; thus the main part of the previous management was laid off and all operational expenses have been optimized where it was possible. This was result of close monitoring of cash burn and thorough cost review. The company will start new fiscal year with clean structure, which will be able to deliver defined targets and results. Additionally, the ultimate beneficial owner has confirmed that they will continue to support the company for the foreseeable future including a period of twelve months from signing of these financial statements.

**1.3    Turnover**

Turnover represents the fee that Centili Limited earns from facilitating payments to Digital Application Merchants from consumers through Telecom Providers. Centili Limited acts as agent to facilitate transactions between Merchants and Telecoms Providers and as such turnover represents solely Centili Limited's fee and does not represent the gross revenues and costs associated with the transaction between Merchant and Telecom Provider.

Turnover is recognised at the fair value of the consideration received or receivable for services provided in the normal course of business, and is shown net of VAT and other sales related taxes. The fair value of consideration takes into account trade discounts and volume rebates.

Revenue is recognised when the significant risks and rewards of ownership have passed to the entity, the amount of revenue can be measured reliably, it is probable that the economic benefits associated with the transaction will flow to the entity and the costs incurred or to be incurred in respect of the transaction can be measured reliably.

**CENTILI LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS (CONTINUED)**

**FOR THE YEAR ENDED 31 DECEMBER 2022**

| | |
|---|---|
| **1** **Accounting policies** | **(Continued)** |

**1.4 Intangible fixed assets other than goodwill**

Intangible assets acquired separately from a business are recognised at cost and are subsequently measured at cost less accumulated amortisation and accumulated impairment losses.

Intangible assets acquired on business combinations are recognised separately from goodwill at the acquisition date where it is probable that the expected future economic benefits that are attributable to the asset will flow to the entity and the fair value of the asset can be measured reliably; the intangible asset arises from contractual or other legal rights; and the intangible asset is separable from the entity.

Amortisation is recognised so as to write off the cost or valuation of assets less their residual values over their useful lives on the following bases:

| | |
|---|---|
| Licences, domains & computer programs | Straight line basis over 1 year |
| Software Platform | Straight line basis over 5 years |

**1.5 Tangible fixed assets**

Tangible fixed assets are initially measured at cost and subsequently measured at cost or valuation, net of depreciation and any impairment losses.

Depreciation is recognised so as to write off the cost or valuation of assets less their residual values over their useful lives on the following bases:

| | |
|---|---|
| Computer equipment | Straight line over 1 to 2 years |
| Servers | Straight line over 1 to 3 years |

The gain or loss arising on the disposal of an asset is determined as the difference between the sale proceeds and the carrying value of the asset, and is credited or charged to profit or loss.

**1.6 Fixed asset investments**

Interests in subsidiaries are initially measured at cost and subsequently measured at cost less any accumulated impairment losses. The investments are assessed for impairment at each reporting date and any impairment losses or reversals of impairment losses are recognised immediately in profit or loss.

A subsidiary is an entity controlled by the company. Control is the power to govern the financial and operating policies of the entity so as to obtain benefits from its activities.

An associate is an entity, being neither a subsidiary nor a joint venture, in which the company holds a long-term interest and where the company has significant influence. The company considers that it has significant influence where it has the power to participate in the financial and operating decisions of the associate.

Entities in which the company has a long term interest and shares control under a contractual arrangement are classified as jointly controlled entities.

**1.7 Cash and cash equivalents**

Cash and cash equivalents are basic financial assets and include cash in hand, deposits held at call with banks, other short-term liquid investments with original maturities of three months or less, and bank overdrafts. Bank overdrafts are shown within borrowings in current liabilities.

**CENTILI LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS (CONTINUED)**

**FOR THE YEAR ENDED 31 DECEMBER 2022**

| 1 | **Accounting policies** | **(Continued)** |
|---|---|---|

**1.8   Financial instruments**

The company has elected to apply the provisions of Section 11 'Basic Financial Instruments' and Section 12 'Other Financial Instruments Issues' of FRS 102 to all of its financial instruments.

Financial instruments are recognised in the company's balance sheet when the company becomes party to the contractual provisions of the instrument.

Financial assets and liabilities are offset, with the net amounts presented in the financial statements, when there is a legally enforceable right to set off the recognised amounts and there is an intention to settle on a net basis or to realise the asset and settle the liability simultaneously.

**Basic financial assets**

Basic financial assets, which include debtors and cash and bank balances, are initially measured at transaction price including transaction costs and are subsequently carried at amortised cost using the effective interest method unless the arrangement constitutes a financing transaction, where the transaction is measured at the present value of the future receipts discounted at a market rate of interest. Financial assets classified as receivable within one year are not amortised.

**Classification of financial liabilities**

Financial liabilities and equity instruments are classified according to the substance of the contractual arrangements entered into. An equity instrument is any contract that evidences a residual interest in the assets of the company after deducting all of its liabilities.

**Basic financial liabilities**

Basic financial liabilities, including creditors, bank loans, other loans and preference shares that are classified as debt, are initially recognised at transaction price unless the arrangement constitutes a financing transaction, where the debt instrument is measured at the present value of the future payments discounted at a market rate of interest. Financial liabilities classified as payable within one year are not amortised.

Debt instruments are subsequently carried at amortised cost, using the effective interest rate method.

Trade creditors are obligations to pay for goods or services that have been acquired in the ordinary course of business from suppliers. Amounts payable are classified as current liabilities if payment is due within one year or less. If not, they are presented as non-current liabilities. Trade creditors are recognised initially at transaction price and subsequently measured at amortised cost using the effective interest method.

**1.9   Equity instruments**

Equity instruments issued by the company are recorded at the proceeds received, net of transaction costs. Dividends payable on equity instruments are recognised as liabilities once they are no longer at the discretion of the company.

**1.10   Taxation**

The tax expense represents the sum of the tax currently payable and deferred tax.

**Current tax**

The tax currently payable is based on taxable profit for the year. Taxable profit differs from net profit as reported in the profit and loss account because it excludes items of income or expense that are taxable or deductible in other years and it further excludes items that are never taxable or deductible. The company's liability for current tax is calculated using tax rates that have been enacted or substantively enacted by the reporting end date.

Current tax also includes foreign tax relating to withholding taxes paid in various jurisdictions. Withholding tax is recognised in the period in which it is paid.

**CENTILI LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS (CONTINUED)**

**FOR THE YEAR ENDED 31 DECEMBER 2022**

| 1 | Accounting policies | (Continued) |
|---|---|---|

**1.11 Foreign exchange**

Monetary assets and liabilities denominated in foreign currencies are translated into Euro at the rates of exchange ruling at the balance sheet date. Transactions in foreign currencies are recorded at the rate ruling at the date of the transaction. All differences are taken to profit and loss account.

**2    Judgements and key sources of estimation uncertainty**

In the application of the company's accounting policies, the director is required to make judgements, estimates and assumptions about the carrying amount of assets and liabilities that are not readily apparent from other sources. The estimates and associated assumptions are based on historical experience and other factors that are considered to be relevant. Actual results may differ from these estimates.

The estimates and underlying assumptions are reviewed on an ongoing basis. Revisions to accounting estimates are recognised in the period in which the estimate is revised where the revision affects only that period, or in the period of the revision and future periods where the revision affects both current and future periods.

**Allowance for doubtful debts**

The company assesses its doubtful debt allowance at each reporting date. In determining the recoverability of a trade receivable, the company considers any change in the credit quality of the trade receivable and any circumstances of which management is aware regarding a customer's inability to meet its financial obligations.

**3    Turnover**

An analysis of the company's turnover is as follows:

|  | 2022 | 2021 |
|---|---|---|
|  | € | € |
| **Turnover analysed by class of business** | | |
| Gross funds receivable from customers | 4,993,997 | 10,315,410 |
| Gross funds payable to Merchants, Telecom Providers and other suppliers | (4,469,811) | (7,846,405) |
|  | 524,186 | 2,469,005 |

|  | 2022 | 2021 |
|---|---|---|
|  | € | € |
| **Turnover analysed by geographical market** | | |
| Europe | 1,686,640 | 2,783,831 |
| Rest of World | 3,061,603 | 6,838,855 |
| UK | 245,754 | 692,724 |
|  | 4,993,997 | 10,315,410 |

**4    Operating loss**

|  | 2022 | 2021 |
|---|---|---|
| Operating loss for the year is stated after charging/(crediting): | € | € |
| Exchange (gains)/losses | (57,038) | 22,586 |

**CENTILI LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS (CONTINUED)**

**FOR THE YEAR ENDED 31 DECEMBER 2022**

5    **Employees**

The average monthly number of persons (including directors) employed by the company under an employment contract during the year was:

|  | 2022 Number | 2021 Number |
|---|---|---|
| Total | - | - |

6    **Intangible fixed assets**

|  | Other € |
|---|---|
| **Cost** | |
| At 1 January 2022 and 31 December 2022 | 1,212,445 |
| **Amortisation and impairment** | |
| At 1 January 2022 and 31 December 2022 | 1,212,445 |
| **Carrying amount** | |
| At 31 December 2022 | - |
| At 31 December 2021 | - |

7    **Tangible fixed assets**

|  | Plant and machinery etc € |
|---|---|
| **Cost** | |
| At 1 January 2022 and 31 December 2022 | 138,251 |
| **Depreciation and impairment** | |
| At 1 January 2022 and 31 December 2022 | 138,251 |
| **Carrying amount** | |
| At 31 December 2022 | - |
| At 31 December 2021 | - |

8    **Fixed asset investments**

|  | 2022 € | 2021 € |
|---|---|---|
| Shares in group undertakings and participating interests | 30,847 | 30,847 |

**CENTILI LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS (CONTINUED)**

**FOR THE YEAR ENDED 31 DECEMBER 2022**

9    **Debtors**

|  | 2022 | 2021 |
|---|---|---|
| **Amounts falling due within one year:** | € | € |
| Trade debtors | 706,098 | 2,006,922 |
| Amounts owed by companies under common control | 2,492,517 | 2,812,416 |
| Amounts owed by group undertakings | 7,478 | 7,478 |
| Other debtors | 1,019,475 | 1,926,541 |
|  | 4,225,568 | 6,753,357 |

10    **Creditors: amounts falling due within one year**

|  | 2022 | 2021 |
|---|---|---|
|  | € | € |
| Trade creditors | 2,923,852 | 1,610,124 |
| Amounts owed to group undertakings | 390,367 | 184,647 |
| Amounts owed to entities under common control | 2,656,039 | 2,526,180 |
| Other taxation and social security | - | 10,607 |
| Other creditors | 2,299,025 | 3,269,507 |
|  | 8,269,283 | 7,601,065 |

11    **Called up share capital**

| | 2022 Number | 2021 Number | 2022 € | 2021 € |
|---|---|---|---|---|
| **Ordinary share capital** | | | | |
| **Issued and fully paid** | | | | |
| Ordinary shares | 4,518,221 | 4,518,221 | 5,342,260 | 5,342,260 |

The ordinary shares have a par value of £1 each.

12    **Events after the reporting date**

No significant post Covid-19 effects can be seen in the UK and globally, but Ukrainian war still has economic and business impacts. Management does not expect any further reflections on the business when it comes to pandemic situation, but Ukrainian war disabled the company to cooperate with partners from Russia and no similar business activities are anticipated in the future.

13    **Related party transactions**

**Transactions with related parties**
During the year the company entered into the following transactions with related parties:

CENTILI LIMITED

NOTES TO THE FINANCIAL STATEMENTS (CONTINUED)

FOR THE YEAR ENDED 31 DECEMBER 2022

| 13 | Related party transactions | | | | (Continued) |
|---|---|---|---|---|---|
| | | Sales 2022 € | Sales 2021 € | Purchases 2022 € | Purchases 2021 € |
| | Commonly controlled entities | 909,680 | 1,148,103 | 2,146,010 | 2,153,475 |

The following amounts were outstanding at the reporting end date:

| | 2022 € | 2021 € |
|---|---|---|
| **Amounts due to related parties** | | |
| Commonly controlled entities | 2,656,039 | 2,526,180 |
| Entities over which the entity has control, joint control or significant influence | 390,367 | 184,647 |

The following amounts were outstanding at the reporting end date:

| | 2022 € | 2021 € |
|---|---|---|
| **Amounts due from related parties** | | |
| Commonly controlled entities | 2,492,517 | 2,812,416 |
| Entities over which the entity has control, joint control or significant influence | 7,478 | 7,478 |

Commonly controlled entities comprise entities which are ultimately controlled by the same party as the company.

14    Parent company

The immediate and ultimate controlling party was S Kutic until 13th January 2023 (2021: S Kutic).

**CENTILI LIMITED**

**DETAILED TRADING AND PROFIT AND LOSS ACCOUNT**

**FOR THE YEAR ENDED 31 DECEMBER 2022**

| | € | 2022 € | € | 2021 € |
|---|---|---|---|---|
| **Turnover** | | | | |
| Sales | | 524,186 | | 2,469,005 |
| | | | | |
| **Administrative expenses** | | | | |
| Licences (up to one year) | 40,818 | | 55,565 | |
| Travel expenses | - | | 8,846 | |
| Utilities | 2,620 | | 3,493 | |
| Intellectual and other expenses | 3,592,797 | | 3,751,114 | |
| Accountancy | 103,941 | | 49,212 | |
| Audit fees | 34,233 | | 21,379 | |
| Bank charges | 12,130 | | 21,000 | |
| Debts waived/(written back) | - | | 405,116 | |
| Marketing and events | 28,944 | | 63,726 | |
| Sundry expenses | 35,181 | | 28,229 | |
| Profit or loss on foreign exchange | (57,038) | | 22,586 | |
| | | (3,793,626) | | (4,430,266) |
| | | | | |
| **Operating loss** | | (3,269,440) | | (1,961,261) |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE 4D FACTORY, LLC, *et al.*[1] | No. 23-11618 (MEW) (Subchapter V Cases) |
| Debtors. | (Jointly Administered) |

---

**[PROPOSED] ORDER GRANTING GM EUROPE LIMITED'S MOTION FOR ENTRY OF AN ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO NON-DEBTOR CENTILI LIMITED, OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM THE STAY**

---

Upon the motion (the "Motion") of GM Europe Limited ("GM Europe") for entry of an order declaring the automatic stay inapplicable, or in the alternative, granting GM Europe relief from the automatic stay to pursue collection efforts and the potential commencement of insolvency proceedings in the United Kingdom against non-debtor Centili Limited ("Centili"); and it appearing that this Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157, 1334(b), and 1452(a); and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the requested relief has been provided in accordance with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and that, except as otherwise ordered herein, no other or further notice is necessary; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish

---

[1]  The Debtors in these Subchapter V cases, along with the last four digits of each Debtor's federal tax identification number, are 4D Factory Inc. (6770), and The 4D Factory, LLC (8935).

just cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The automatic stay pursuant to section 362(a) of the Bankruptcy Code, 11 U.S.C.

§ 362(a), does not apply to Centili and does not prevent GM Europe from pursuing collection

efforts, including the filing of a winding up petition in the United Kingdom, against Centili.

3.      The terms and conditions of this Order shall be immediately effective and

enforceable.

4.      The Court shall retain jurisdiction to hear and determine all matters arising from or

related to the implementation, interpretation, or enforcement of this Order.

Dated: January _____, 2024
New York, New York

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE