## EXHIBIT 1

1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   - - - - - - - - - - - - - - - - - - - -x

5

6   In Re:

7    4D FACTORY, INC.,                        Main Case No.

8         Debtor.                             23-11618-mew

9

10  - - - - - - - - - - - - - - - - - - - -x

11

12              United States Bankruptcy Court

13              One Bowling Green

14              New York, New York

15

16              December 13, 2023

17              11:05 AM

18

19

20

21  B E F O R E:

22  HON. MICHAEL E. WILES

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  KAREN

2

1

2    Hearing re: motion for an order declaring automatic stay

3    inapplicable, or in the alternative, granting relief from

4    automatic stay.

5

6    Objection filed.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1

2    Transcribed by:    Jamie Gallagher

3    eScribers, LLC

4    7227 North 16th Street, Suite #207

5    Phoenix, AZ 85020

6    (800) 257-0885

7    operations@escribers.net

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1

2  A P P E A R A N C E S:

3  SPENCE LAW OFFICE, P.C.

4        Attorneys for Debtor

5        500 N. Broadway

6        Jericho, NY 11753

7

8  BY:   ROBERT SPENCE, ESQ.

9

10  JENNER & BLOCK LLP

11        Attorneys for Colin Foran, Naomi Lackaff, Mark Long,

12         Aaron Nonis

13        1155 Avenue of the Americas

14        New York, NY 10036

15

16  BY:   JACOB ALDERDICE, ESQ.

17

18  BEDERSON LLP

19        Subchapter V Trustee

20        100 Passaic Avenue

21        Suite 310

22        Fairfield, NJ 07004

23

24  BY:   CHARLES PERSING, ESQ. (TELEPHONIC)

25

5

1

2  JENNER & BLOCK LLP

3        Attorneys for Colin Foran, Naomi Lackaff, Mark Long,

4         Aaron Nonis

5        515 South Flower Street

6        Suite 3300

7        Los Angeles, CA 90071

8

9  BY:   TODD C. TORAL, ESQ.

10

11  ARENTFOX SCHIFF LLP

12        Special Counsel to the Board

13        1301 Avenue of the Americas

14        42nd Floor

15        New York, NY 10019

16

17  BY:   BETH BROWNSTEIN, ESQ.

18

19

20

21                P R O C E E D I N G S

22        THE COURT:  All right.  4D Factory.

23        MR. SPENCE:  Good morning, Your Honor.  Robert Spence

24  for 4D, Spence Law Office.

25        THE COURT:  Good morning.

**4D FACTORY, INC.**

6

1           MR. SPENCE:  Good morning.

2           MR. TORAL:  Good morning, Your Honor.  Todd Toral from

3    the law firm of Jenner & Block on behalf of the movant.  I'm

4    also here with my colleagues, Jacob Alderdice and Carl Wedoff.

5           THE COURT:  Good morning.

6           All right.  I've read your papers.  I don't need you

7    to repeat anything that's in them.  Let me just be sure I

8    understand.  In the proposed --

9           MR. PERSING:  Excuse me, Your Honor.  I'm sorry, Your

10   Honor.  Charles Persing, Subchapter V Trustee.  Sorry.

11          THE COURT:  No problem, Mr. Persing.  In the --

12          MR. PERSING:  Thank you very much, Your Honor.

13          THE COURT:  -- Delaware action that you want to

14   pursue, what exactly is the relief that you are seeking?

15          MR. TORAL:  Thank you, Your Honor.  The relief that

16   we're seeking is set forth in our complaint, and there are

17   three remedies.  The first is declaratory and injunctive

18   relief, recognizing the conversion of the states to preferred

19   stock.  The second remedy that we seek is injunctive relief for

20   storing Mr. Mark Long as the CEO of Neon Machine.  And the

21   third and final remedy that the plaintiffs in the Delaware

22   action seek is compensatory damages and attorney's fees against

23   the director defendants, and any said damages that are

24   recovered and established in that proceeding would be damages

25   that would be returned to Neon Machine, given it's a derivative

**4D FACTORY, INC.**

7

1  action, Your Honor.

2  THE COURT:  And what damages do you allege that the

3  directors have caused?

4  MR. SPENCE:  Your Honor, the damages, of course, are

5  subject to proof at the time of trial.  The damages that are

6  ongoing at the present time are that Neon Machine is in the

7  process of trying to launch its flagship product.  The

8  actions -- the post-petition actions of Mr. Javarone and two of

9  the other director defendants to take control and attempt to

10  take control over the finances of the enterprise, terminating

11  the CEO, who is the founder and in many ways the face of the

12  enterprise and certainly the face of the enterprise with

13  respect to the tier 1 investors that has invested millions, is

14  causing damages that are subject to proof at trial and expert

15  testimony.

16  THE COURT:  Okay.  On behalf of the Debtor, at times

17  in your papers, you seem to suggest that the asset that you

18  think is subject to automatic state protection is the value of

19  your ownership interest in Neon, and other times, you seem to

20  suggest that the asset that is subject to protection is the

21  right to control Neon.  Which is it, or are you claiming both?

22  MR. SPENCE:  We are claiming both, Your Honor.  One

23  leads into the other.  The fact that we have 60 percent of the

24  common stock gives the value to the stock.  The 60 percent of

25  common stock also gives control of the Board that the minority

**4D FACTORY, INC.**

8

1    shareholders agreed to that corporate structure, and so we

2    would be at risk now as control.  And I believe that is one of

3    the things that this -- the automatic stay protects against,

4    the loss of control.  So it does threaten control of Neon by

5    the Debtor, the three out of the five seats, and --

6          THE COURT:  Well, the theory of the complaint here, in

7    terms of control, is that you currently possess control, but

8    that you're not legally entitled to it, that these shares

9    should have been issued sometime before you filed your

10   bankruptcy case.  As I understand it, the preferred shares are

11   convertible; is that right?

12         MR. SPENCE:  The preferred shares are under the SAFE

13   agreements.  There's an automatic conversion upon a network

14   launch.  But the network launch, if you look at the Hahn (ph.)

15   declaration that we submitted, Your Honor, it describes the

16   circumstances.

17         THE COURT:  I understand.  But I want to talk about

18   the stay issues.

19         MR. SPENCE:  I know you've read them, but --

20         THE COURT:  So the theory of the complaint is that

21   these should have been issued already prior to the bankruptcy.

22   So the mere fact that you currently possess control doesn't

23   necessarily mean that it is your property that is deserving of

24   protection.  You know, if you win a suit in Delaware, then of

25   course nothing is threatened.  Your asset is preserved.

**4D FACTORY, INC.**

9

1        If you lose, wouldn't that just mean in effect that

2    the asset you are claiming to own and that you possessed at the

3    time of bankruptcy didn't rightfully belong to you?  You know,

4    if you had a car and somebody else said, yeah, that's my car.

5    You wouldn't be able to say in bankruptcy that because I had

6    possession and was using the car on the date I filed my

7    bankruptcy petition, nobody can even come in and claim that the

8    car belonged to them.  Right?

9        MR. SPENCE:  Well, Your Honor, under the scenario you

10   just gave, you sort of put it -- I see that squarely in 48th

11   Street Steakhouse where someone else has ownership, and then if

12   that if that ownership is threatened, separate and apart, it

13   would necessarily cancel out the Debtor's possession.  So --

14       THE COURT:  So let's focus on my example.  If the

15   person came in and said the Debtor's using my car, I can prove

16   it's my car.  I want my car.  And the Debtor says, you

17   shouldn't -- the automatic stay applies and you shouldn't even

18   give stay relief to allow them to argue to you and show you

19   that it is their car.  And you shouldn't do that because I had

20   the car and I was using it at the time of the filing of the

21   bankruptcy.  I would give short shrift to that, wouldn't I?

22       MR. SPENCE:  I do think that there's a distinction

23   between your fact pattern, Judge, and the fact pattern we're

24   faced with.  It's a little bit more nuanced where it's not as

25   clear cut in your situation.  It seems a bit more clearcut.

**4D FACTORY, INC.**

1   This is a retroactive declaration of the network launch that if

2   they don't have a network launch, they have no right to the

3   conversion under the SAFE agreements.  So if they have no right

4   in the first instance under the SAFE agreements to declare it,

5   how could they go down to Delaware and do that.

6        THE COURT:  Your -- the asset that you're talking

7   about, which is control, came with a contingency, in effect.

8   It was subject to the possibility that somebody else would have

9   control under these safe agreements.  You don't want me to

10  protect the asset.  You want me to enhance the asset by

11  eliminating that contingency.  How is that what the automatic

12  stay calls for?

13       MR. SPENCE:  I believe under the circumstances of this

14  case that what they're doing, that action down in Delaware,

15  just in the first instance, Judge, it would be binding on the

16  Debtor if there were a network launch.  So just the way they

17  filed it and the way they're going forward --

18       THE COURT:  Binding on the Debtor, in what sense?

19       MR. SPENCE:  That finding in Delaware, where the

20  debtor isn't even a party to the action, that's what the 48th

21  Street Steakhouse case says, in my --

22       THE COURT:  But binding on the Debtor, I mean, whether

23  there was a launch or not has to do with whether these shares

24  are converted.  What do you mean binding on the Debtor?  What

25  does that do to the Debtor?  It may mean that the Debtor is --

**4D FACTORY, INC.**

11

1    the number of shares that the Debtor owns are exactly the same

2    as they used to be.  They just no longer are the majority of

3    shares.

4        MR. SPENCE:  Right.  But it causes a dilution of the

5    Debtor's shares and there's no distinction it's a difference --

6    it's a distinction without a difference.  The dilution of the

7    Debtor's shares is the same thing as taking the Debtor's shares

8    away from the Debtor.  I'm sorry.

9        THE COURT:  Focus on whether you have something that I

10   ought to protect to the extent of not even allowing them to

11   make their arguments, right.  So if I -- let's assume that

12   they're entirely right and that these preferred shares ought to

13   have been issued in the past.  Are you saying I should deny

14   stay relief and that I should allow you to continue to hold

15   control of this entity, even if they might be entirely right

16   and even if somebody else legally might be entitled to exercise

17   that control?  Are you saying that I should deny stay relief

18   and allow you to stay in place, even if that is the case?

19       MR. SPENCE:  Your Honor, under the circumstances of

20   this case, that is what we are saying.  We're saying we want to

21   investigate it here.  The Board has asked for this.  This was

22   sprung on the Board by a third-party right before the filing.

23   The Board took it under advisement.  The record is going to

24   show that.  And the record is also going to show that the

25   minority shareholders have not been cooperative in any way,

**4D FACTORY, INC.**

12

1   shape, or form with the Board.

2        THE COURT:  You want a pocket veto.  You want a long

3   period of investigation during which you continue to exercise

4   the control that you want, right?

5        MR. SPENCE:  Well, Judge, I wouldn't put it just like

6   that.  I want a short period of discovery so that we can

7   determine whether this network launch is --

8        THE COURT:  You'll have it in Delaware, won't you?

9        MR. SPENCE:  Would -- then would the Debtor have to go

10   down there, the stay would have to be lifted.  That would mean

11   that the action was a violation of the stay, isn't it?

12        THE COURT:  Why does the Debtor itself have to do

13   that?  I mean, isn't the company and aren't the individuals

14   going to do that?  Why would the Debtor have to get involved?

15        MR. SPENCE:  Your Honor, I thought about this

16   possibility that it would go back down to Delaware, but I think

17   it would have to go back down to Delaware in such a way that

18   the Debtor's stock -- it's almost like when you're in an

19   adversary proceeding and there's a state court proceeding about

20   dischargeability and the judges would send you back to state

21   court, finish the -- you know, finish the case, do the trial,

22   get your judgment, and then stop everything and come back to

23   the bankruptcy court.  I did think about that possibility that

24   Your Honor might suggest that, and I understand what you're

25   saying, but I think there has to be some safeties when we go

1   back down to Delaware that they can't then trigger and force

2   the Board.  You know, those are administerial acts the Board

3   has to do.  They're not ministerial, according to Mr. Hahn.

4   I'm a corporate expert, but that's why I put in his

5   declaration.

6           THE COURT:  Well, you're suggesting that I could allow

7   stay relief to determine the merits of the case, but stay the

8   actual issuance of the securities except upon further

9   application to me.

10          MR. SPENCE:  That -- I thought that might be one of

11  the things that you may suggest.

12          THE COURT:  You understand that I'm finding it hard to

13  believe if they won a case in Delaware, that I would

14  nevertheless still say that they're not supposed to issue the

15  securities.  I would find that --

16          MR. SPENCE:  Right.  But it's another step --

17          THE COURT:  -- awfully difficult.

18          MR. SPENCE:  It's another step.  There's another step

19  under the SAFE where the preferred share -- the preferred stock

20  then has the right to convert to common stock.  So there's

21  another whole other step.  And we believe that, you know, all

22  of these different steps, I have to -- I would love an

23  opportunity for discovery here, Your Honor, before I could

24  opine any further.  I've had nine days to prepare for this.

25          THE COURT:  I'm not going to have -- I'm not going to

1  have a preliminary trial on the merits in the context of a stay

2  relief motion.  I'm just not going to do it.  So I'm not going

3  to let you do a couple of months' worth of discovery.  I'm not

4  going to do any of that.  Okay?

5         It seems to me quite clear that there are legitimate

6  disputes here.  If there aren't, by the way -- if, as you say,

7  this launch was made up and that the trigger didn't really

8  happen, well, you should be able to dispense with it quickly in

9  a Delaware court then.  But I'm not going to hold things in

10  abeyance and in essence, do my own pre-trial before allowing it

11  to just start anew in Delaware.  It just doesn't make any

12  sense.

13         So what I'm trying to understand, you don't want it to

14  go forward at all because it might affect your rights.  That

15  doesn't seem like the right answer to me.  It seems like my

16  case with the car.  It just doesn't seem right.

17         MR. SPENCE:  I just -- I just think, Judge --

18         THE COURT:  The automatic stay, Section 362(a)(3) is

19  designed to protect your legitimate assets.  It's not meant to

20  allow you to keep everything over which you have possession,

21  but to which you might not be legally entitled.  And that's

22  where I think you have a problem here.  So what are you saying?

23  Are you saying that even if the preferred shares are issued,

24  that the automatic stay would stop the conversion to common

25  shares because that would affect your control?  Are you making

**4D FACTORY, INC.**

15

1  that contention?

2        MR. SPENCE:  Yes, I believe that's another step that

3  is intended after the Delaware action is completed, then that

4  would be another step.  And it's forecasted in the complaint

5  itself.  And I mean, they're claiming, oh, yeah, well, the SAFE

6  holders may then activate this right or take this option and

7  convert it to the common stock.

8        THE COURT:  Well, let's ask him.  Would you agree to

9  come back to me before you actually allowed a conversion of the

10  preferred shares to common shares?

11        MR. TORAL:  Your Honor, I think it's important that

12  the holders of the preferred rights are third parties.  They

13  are not litigants in Delaware.  They are not movants here, and

14  I don't speak for them.

15        I have done the analysis and looked at that

16  fundamental step.  And as I put, I think, in my reply brief

17  that we filed last night, there is no evidence and I have no

18  issue with the fact that those rights holders, should they have

19  administratively and received the benefit of their bargain in

20  terms of the issuance of the preferred, when they want to take

21  the next step, if they want to take the next step, I don't know

22  whether they will or they won't, but if they want to take that

23  next step, the way I read the law is that the Bankruptcy Code

24  would apply and they would have to come back to Your Honor.

25        THE COURT:  And in that regard, it's because you think

1   it would affect the Debtor's control for them to make that

2   conversion?

3          MR. TORAL:  I think it would potentially have one

4   immediate impact, which is to reduce the equity stake that the

5   Debtor has in Neon Machine.  I think it's obvious that if the

6   preferred converts to common, the existing common's stake on a

7   percentage basis goes down from its current 60 percent to

8   something less.  Then if there is another step that that --

9   those new common holders want to take to actually designate

10  people to the Board in order to take control of the Board, I

11  think that that has another impact.  And I'm comfortable

12  indicating to the -- to Your Honor that I think that the

13  Bankruptcy Code and Your Honor's jurisdiction might be

14  implicated.

15         THE COURT:  Might be or would be?

16         MR. TORAL:  Well, if you're pressing me, Your Honor, I

17  think it would be.  I think the case authority draws a fine

18  line between something that is legally -- that is legally going

19  to happen as opposed to factually likely.  And I think moving

20  on that spectrum, and when those acts are undertaken, it

21  becomes closer to the law in Picard and in Chrysler and in

22  Panther case from the Eighth Circuit that we cite, that I think

23  implicates Your Honor's jurisdiction.

24         THE COURT:  So what if I were to issue an order that

25  would say, you can proceed in Delaware, you can get a ruling as

**4D FACTORY, INC.**

17

1   to whether the triggering event is happened, you can even get a

2   ruling as to whether the preferred stock should be issued, but

3   that the parties before me agree that any conversion of that

4   stock or election of a new CEO would affect your control and

5   would require relief from the automatic stay, and my order

6   shouldn't be interpreted as granting such relief at this time.

7   Wouldn't that protect you fully?

8           MR. SPENCE:  If you're, as counsel, said, pressing me

9   on that point, I think it --

10          THE COURT:  That's my job.  My job is to press both of

11  you on all these points.

12          MR. SPENCE:  And I don't want to back down, but what I

13  would ask, Your Honor, is for me to have a moment to think

14  about it.  I am not an investor.  I'm a bankruptcy debtors

15  counsel.  So these terms are a little bit foreign to me, to be

16  honest with you.  The SAFE holders, the conversion of preferred

17  stock, I just want to think about it for a minute.

18          THE COURT:  All right.

19          MR. SPENCE:  I did think about it before now, because

20  I did raise it with Your Honor, but --

21          THE COURT:  And let me ask your adversary here.  One

22  of the forms of relief you're seeking is to restore the CEO.

23  Does that fall into the category of relief that I would need to

24  approve or not?

25          MR. TORAL:  Your Honor, I don't think so.  I think

**4D FACTORY, INC.**

18

1   that the restoration of CEO is a prototypical corporate

2   activity that is organized by the board of directors.  So the

3   condition precedent to that activity is getting the control and

4   those -- that has to --

5         THE COURT:  Explain to me why the automatic stay would

6   stop the election of a new CEO but wouldn't stop the -- a court

7   order putting the old CEO back in place.

8         MR. TORAL:  I think that the automatic stay wouldn't

9   apply to any CEO, whether the restoration of the current CEO or

10  the hiring of a new CEO.  I think the automatic stay might

11  apply or even would apply with respect to at the equity level,

12  moving from preferred to common.

13        THE COURT:  The election of directors is what you're

14  talking about as --

15        MR. TORAL:  Yes, Your Honor.

16        THE COURT:  All right.  All right.  You wish to what?

17  To think about this?  You want to consult with somebody.

18        MR. SPENCE:  Yeah.  Could I have a moment to think

19  about this, Your Honor, if that's okay with you?

20        THE COURT:  Okay.

21        MR. SPENCE:  But I will say -- I just want to say that

22  they're -- just so, Your Honor, it's clear, there's no

23  cooperation with the Board.  The Board appoints the CEO.  The

24  CEO serves at the Board's, you know, discretion.  They vote the

25  CEO in.  Mr. Long was removed.  He was suspended with pay.  He

**4D FACTORY, INC.**

1   was also previously removed as the Board member -- as a Board

2   member in August, and that's when all of this new activity and

3   new action by the minority shareholders began.

4           They're not cooperative at all with the Board.  And

5   quite frankly, they're imperiling the company because of it,

6   because they're not active with the Board.  So behind this, we

7   have another financing that's being hoisted upon us.  And we

8   just got financials, financials like quote/unquote, after four

9   months of the Board requesting financials.  So they don't point

10  to one thing that the Board did.  They agreed to the authority

11  of the Board.  The Board has the apparent authority.  There's

12  no court ruling in any way, shape, or form.  There's no

13  injunction.  The Board has the authority.  They're just not

14  listening to the Board.

15          THE COURT:  What is -- what exactly --

16          MR. SPENCE:  It's a fundamental problem.

17          THE COURT:  I may regret even asking, but what is the

18  underlying dispute between you as to just what you think Neon

19  ought to be doing right now that it either -- either what it is

20  doing that it shouldn't or what it should be doing and isn't?

21          MR. SPENCE:  We don't know that.  We know they raised

22  $20 million over the summer, Judge, and they have $1.7 million

23  left, which we found out yesterday.  They said their burn rate

24  was $2.4 million per month.

25          THE COURT:  Who's the they?  Neon?

**4D FACTORY, INC.**

20

1          MR. SPENCE:  The minority shareholders.  The minority

2     shareholders are the managers, basically, not -- maybe not all

3     of them, but at least two of them, Don Norby and Mark Long.

4     Mark Long is the head of the creative team at Neon that the

5     Debtor purchased from Warner Brothers four years ago.  And the

6     Debtor has invested $6 million into this.  The Debtor is not

7     taking any money out.  The Debtor is just trying to supervise

8     and manage through its Board seats what's going on there.

9          It's a complete disconnect.  There's not -- I don't

10    know what it is.  They don't like Mr. Javarone, I guess.

11    That's the gist that I've gotten.  But that's not enough.  It's

12    not enough.  Okay.

13         THE COURT:  I thought I remembered from your earlier

14    papers that the Debtor's goal here was to go ahead and allow

15    the product launch for Neon, which might have been imminent or

16    maybe to sell its stake in Neon.

17         MR. SPENCE:  Yes.  They have blocked the Debtor's

18    attempt or the Board's attempt to hire an investment bank -- an

19    investment banker, Castle Placement, I believe was the name of

20    the entity.  It's a New York City entity.  Your Honor might

21    have heard of it.  But anyway, they're blocking it because we

22    can't even write a check for $10,000 to retain that IB.  And

23    now, they're forced --

24         THE COURT:  And why does Neon need to retain a banker

25    for the Debtor to sell its shares in Neon?

1          MR. SPENCE:  Okay.  So I understand.  They need

2    probably tens of millions more dollars to get Shrapnel to

3    market.  Shrapnel is great.  Everyone's anticipating this video

4    game.  To get it to market, they need millions more dollars

5    over time.  So we're trying to hire an investment banker for

6    the company.  When I say we, I mean the Board and the Board

7    approved the investment banker on or about November 13th, and

8    they're blocking the retention of that.  You know, they won't

9    allow the Board to have control of the bank account.

10         The Board is represented by very competent counsel,

11    ArentFox.  And you know, the Board needs to take actions to

12    make sure the company is okay, when the management is holding

13    it hostage and coming here with all these bad acts leading up

14    to this: no cooperation, no access to the bank account.  The

15    Board, you know, is hamstrung -- I mean --

16         THE COURT:  How -- what on earth is it that would

17    entitle management to deny a Board access to information about

18    the bank accounts?

19         MR. SPENCE:  That's a really good question.  It has --

20         THE COURT:  What's going on?

21         MR. TORAL:  Your Honor, I understand that the

22    financials would have been provided to the Board management.  I

23    think they were requested somewhere around --

24         THE COURT:  Why should they have to ask?  For heaven's

25    sakes, I mean, how is a board supposed to do its ordinary

**4D FACTORY, INC.**

22

1  functions if they're not regularly given these things without

2  having to press management for them?

3        MR. TORAL:  I agree, Your Honor.  And certainly, it's

4  been communicated that the financials need to be provided to

5  the Board.  I understand that the financials have been provided

6  to the Board.  I don't know of these bad acts that my learned

7  colleague is talking about.

8        I do know that there is a concern about the efforts

9  that Mr. Javarone has taken over -- in an effort to take over

10 the bank accounts.  There is a fundamental lack of trust that

11 goes to issues of integrity, but the navigation of that

12 intersection between trying to make sure that the entity is

13 protected from conduct that wants for integrity and the Board's

14 rightful responsibility and needs to get that information is a

15 difficult line, to least at the current moment, given the

16 nature of the claims and concerns.

17       MR. SPENCE:  To paraphrase what my colleague just

18 said, no, they're not going to cooperate with the Board.  We

19 can't even write a check for ArentFox to come in to be

20 retained.  I mean, that was a fiasco.  I mean, it's ridiculous.

21       THE COURT:  Why do you need -- why does the Board need

22 somebody else to approve retention of counsel?

23       MR. SPENCE:  Because the -- no, no.  The Board

24 approved the retention of ArentFox, but the Board can't write a

25 check.  The company should be providing the funds to --

1        THE COURT:  Are you saying that somebody who works for

2    the company is refusing to write a check that the Board has

3    directed the issues?

4        MR. SPENCE:  That is correct.  It's Mark Long and

5    Andrew Grossman.  Those are two of the actors here that we know

6    of that are stonewalling Board.  And it's a real problem.  It's

7    ridiculous.  Excuse me.

8        MR. TORAL:  Hyperbole aside, Your Honor, it's not

9    ridiculous.  ArentFox has been retained by Mr. Javarone, Mr.

10    Horowitz, and Mr. Honour to defend their interest in Delaware.

11    They have not been retained by the Board.

12        Nonetheless, the Board has instructed management to

13    write a check to pay for those fees.  Those -- that contest,

14    should the relief requested in the motion be granted, should be

15    handled by the Delaware court.  But for the Board to command

16    management to pay the Board members' fees, I think has struck

17    management as beyond the pale.  They have asked at for the

18    director defendants to confirm who ArentFox actually

19    represents.  Do they purport to represent the Board or do they

20    purport to represent the individual director defendants in the

21    Delaware action and they have not been given a response.

22        THE COURT:  What's the answer to that question?

23        MR. SPENCE:  The answer to that question is my

24    understanding is that ArentFox, I mean ArentFox can answer for

25    itself, but it represents the Board.  That's my understanding

1  of what's going on.  The Board can have counsel in this

2  situation and should have counsel in this situation.

3      There are more acts going on surrounding this, Judge,

4  than Your Honor realizes, that we have financing here that

5  purports to grant preferred stock, that has full participation,

6  meaning that it will run if allowed, and again, I've raised

7  this with Mr. Toral, and I have instructed -- I believe he

8  agrees, I'm not going to speak for him, that this would also

9  require bankruptcy court approval if we were to get funding at

10 a level where new stock is issued in such a way that the common

11 stock is basically crushed or whatever.

12      But I mean, we're acting for the good of the company.

13 We're trying to act for the good of the company.  The

14 Debtors  -- members of the Board are trying to govern and

15 they're being prevented.  That's the bottom line.  ArentFox is

16 now coming in.  They understand.  They're incredibly

17 sophisticated in these things, and they're assisting the Board

18 members in getting control of the bank account and control of

19 the entity and the financials.  These are just basic things.

20 There's no act that they point to that the Board accomplished

21 or attempted to harm Neon.

22      They're going behind the scenes, Judge.  They're

23 contacting my estate's creditors.  They're contacting those

24 creditors for no reason.  They have no privity with my

25 creditors.  And, you know, I seem to understand that they're

**4D FACTORY, INC.**

25

1    trying to instigate action against the Debtor.

2             So this is a full-court press here.  There's no

3    cooperation with the Board.  There's contact to my creditors

4    and interference with my case.  And there's also the Delaware

5    action, which was telegraphed in Mr. Toral's November 10th

6    letter.  That letter said, I know -- I acknowledge there's some

7    kind of dispute here, Mr. Spence, but I'm going to proceed with

8    an abundance of caution and I'm going to go to the bankruptcy

9    court first.

10            Here I am standing here on nine days' notice.  I don't

11   understand it, Judge.  I wish there were -- had he come here

12   asking for permission instead of what I consider forgiveness in

13   this particular motion, that maybe we would have had time to

14   consider all the arguments.  Instead, this is a bum rush by a

15   bunch of bad actors, from the estate's perspective.  There's

16   the Board perspective, too, but the estate controls three of

17   those members.  We're just trying to get information.

18            I can't even get the information to comply with Rule

19   2015.3.  I asked them for the information.  They said use the

20   old stock.  Finally, I got the new stuff.  They said, we'll

21   talk to the client, but I can't make heads or tails of this

22   two-page financial.  I'm going to have to send it to

23   Mr. Persing.  Mr. Persing, luckily, is a -- is an accountant by

24   trade.  It does say confidential, for Board use only.  So I

25   have to get his agreement to keep it confidential.

**4D FACTORY, INC.**

26

1      I'm not trying -- we're not trying in any way to harm

2  the Neon Board -- I mean, the Neon shareholders, the minority

3  shareholders.  We're trying to protect the overall group and

4  engage in proper governance.  And that is not an unfair thing

5  to want.  That's just a basic thing that Mr. Long and

6  company  -- and by the way, Judge, just so you know, the facts

7  are going to bear this out.

8      This is his second mutiny.  The first mutiny, he took

9  everybody and the intellectual property, and he was leaving.  I

10  have it from 2021.  I have all the documents and how he thanked

11  Mr. Javarone for being so generous and kind and considerate for

12  bringing him back into the fold.  And that's why we have Neon

13  Media was the group where Mr. Long and company, where they

14  repurchased them.  They then formed, based on their strong arm

15  tactics, they moved into Neon Machine.  The Debtor allowed it.

16  The Debtor allowed the movement of IP from Neon Machine into --

17  from Neon Media into Neon Machine and funded this group $6

18  million.  It's one of the reasons the Debtor had to take the

19  loan and I think, MEP counsel is on the phone, had to take the

20  loan with MEP to help fund all of these activities.

21      Anyway, I just want Your Honor to know that the

22  Debtor has acted reasonably in the past.  I wouldn't allow them

23  to act unreasonably.  I would insist that they comply.  If the

24  shoe were on the other foot, you're -- you can be certain I'd

25  be standing in the courtroom, and that's probably why counsel

1  got that two-page financial over, if I'm standing in the

2  courtroom and I haven't even delivered financials or tax

3  returns, what am I doing?  I'm a bad actor.  That's what I am,

4  because I'm acting in my self-interest and the self-interest of

5  other entities -- other entities involved in Neon Machine.

6  They're acting in their self-interest, and they're doing it to

7  undercut the Debtor and in such a way that it's not pleasant,

8  Judge.  It's a very unpleasant situation we have here.

9         And I raised it at the first conference.  I was

10  trying to quell it and try to get control without bringing the

11  Court in.  I was imploring the Board, keep trying, keep sending

12  the notices, even though you're being ignored.  A host of

13  emails, just ignored them totally.  We need financials.  We

14  need access to the bank account.  Please do that.  Silence.

15  No -- nothing at all.

16         During this case, Judge, under my supervision of the

17  Debtor and the estate, I'm watching this in real time, and it's

18  very frustrating.  And I'll sit down now.  Thank you, Your

19  Honor.

20         MR. TORAL:  Your Honor, much of that was unfortunate.

21  There is no bum rush.  There are no bad actors here.  When I --

22  when a letter was sent on November --

23         THE COURT:  It sounds like you both think there are

24  bad actors.  You're just pointing the fingers at each other.

25         MR. TORAL:  Well, that is true, Your Honor.  And those

**4D FACTORY, INC.**

28

1  bad acts --

2        THE COURT:  You know, I've got to tell you, I get the

3  very strong sense that what I really have here is a lot of

4  petulant childishness, people resenting the fact that other

5  people might have a legitimate interest in what's going on, on

6  both sides.  Perhaps Mr. -- you know, on the one side, somebody

7  being upset that anybody has the audacity to question something

8  that the Board wants or that the majority owner wants.  And on

9  the other hand, the developers of the project resenting the

10  idea that anybody gets to tell them anything about how their

11  project is going to develop, even if somebody's put money into

12  it.

13        That's all nonsense.  It really is.  It's childish

14  garbage, and on both sides, it sounds like.  I don't think I

15  have jurisdiction over any of it.  It's all happening at a non-

16  debtor company.  There are claims against individual directors.

17  I don't have jurisdiction over the individual directors.

18  Somebody might make a case that it's somehow related to the

19  bankruptcy case, but it would be extremely thin.

20        There are issues here that if people aren't going to

21  be grown up, they're going to have to litigate, unfortunately,

22  and I don't have the jurisdiction to do it, and probably even

23  if I had the jurisdiction, I don't have the power to enter a

24  final judgment.  It would all have to be redone in the district

25  court.

1      So I'm going to let it happen in Delaware.  But in the

2  meantime, if your clients aren't giving the Debtor information

3  that it is obligated to provide under the Bankruptcy Code,

4  they're going to be in here.  They're going to be telling me

5  why, and they're going to be at risk if I don't like the

6  answers that they give.  And you make sure that they understand

7  that.  Okay?

8      MR. TORAL:  Very well, Your Honor.

9      THE COURT:  I am not going to let them stand in the

10  way of this Debtor's compliance with its obligations and

11  information does not belong to them.  They don't have a veto

12  power over what gets disclosed and what the bankruptcy rules

13  require.  All right?

14      MR. TORAL:  Very well, Your Honor.  I'll make that

15  clear.

16      THE COURT:  Okay.

17      MR. TORAL:  Thank you.

18      MR. SPENCE:  Your Honor, could I have one moment to

19  think about the -- what you had already asked me --

20      THE COURT:  Yes.

21      MR. SPENCE:  -- about that?

22      THE COURT:  Yes.

23      MR. SPENCE:  If it's okay, I would take --

24      THE COURT:  Would you like to adjourn for ten minutes

25  and then --

30

1          MR. SPENCE:  That would be great.  I might even

2     consult with my -- with counsel here to see if there's some

3     kind of --

4          THE COURT:  Okay.

5          MR. SPENCE:  -- joint resolution to it.  Thank you.

6          THE COURT:  Very good.  Did you have something you

7     wanted to say or --

8          MS. BROWNSTEIN:  Good afternoon, Your Honor.  Beth

9     Brownstein from ArentFox Schiff.  We did not make an appearance

10    in this case.  It was just because we were brought up, I wanted

11    to clarify that we are special counsel to the Board.

12         That was my only purpose for speaking.  Thank you,

13    Your Honor.

14         THE COURT:  Okay.  We'll give you -- should we just

15    come back in ten minutes or do you want to knock on the door

16    when you're ready to proceed?

17         MR. SPENCE:  If it's okay, we'll knock on the door.

18         THE COURT:  Okay.

19         MR. SPENCE:  Which door is it?

20         THE COURT:  It's around the corner, and you'll see my

21    name on it.

22         MR. SPENCE:  That's convenient.

23      (Recess from 11:43 a.m., until 12:08 p.m.)

24         THE COURT:  Please be seated.  Okay.  Where do we

25    stand?

**4D FACTORY, INC.**

31

1        MR. SPENCE:  Yes, Judge.  Thank you for your

2    consideration and letting us think about what was proposed on

3    the record, I guess by the Court.  But we discussed it.

4        My client is ready to agree to that, that that would

5    be acceptable, that there would be some stay protection still

6    here, but the Delaware action would be allowed to go forward

7    with those protections in place, as outlined in the record.

8        THE COURT:  Okay.  Do you agree?

9        MR. TORAL:  Your Honor, it would be useful to me if

10   you -- if I could ask Your Honor to articulate what those

11   protections might be.  It's been a long oral argument today,

12   and I don't have them on top of mind or the transcript at the

13   ready, but I am mindful of the risk of taking positions for

14   parties I don't represent and are not before Your Honor in an

15   order that -- beyond what I think I said on the record, which

16   is I certainly believe that the Bankruptcy Code applies and can

17   apply in the right circumstance on those -- on facts that are

18   presented at that time.

19       THE COURT:  Okay.  You can probably get a copy of the

20   hearing notes or the transcript to see exactly how I put it

21   before, and I may have put it more perfectly then, but what I

22   understood we would say is that the parties -- that we'll go

23   forward with the Delaware action, but the parties who have

24   appeared in front of me today have agreed that any actual

25   conversion of preferred stock to common stock and/or any use of

32

1  the preferred or common stock to elect different directors

2  would constitute actions that would implement -- implicate the

3  automatic stay and that would require further application to

4  me, and nothing in my order should be interpreted as granting

5  relief from the automatic stay to allow those things to happen.

6          I understand that there are parties who would have the

7  stock are not actually here.  Maybe they have a different view,

8  but I would hope that if they read that, they would understand

9  that they would be taking chances they shouldn't take to do

10 things without coming to me.

11         MR. TORAL:  Very well, Your Honor.

12         THE COURT:  That's all I need to say.

13         MR. TORAL:  Very well.  Thank you.

14         THE COURT:  Okay.

15         MR. TORAL:  Thank you, Your Honor.  Yes.

16         THE COURT:  All right.  So you'll put all that in a

17 form of agreed order and submit it to the Court?

18         MR. SPENCE:  Yes, Your Honor.

19         MR. TORAL:  And if I may, were you looking --

20         THE COURT:  You really should agree on some adult

21 supervision.  It would solve all your problems.  Is there

22 really nobody that you both trust that you could say, you know,

23 we'll both kind of step back and you run this?

24         MR. TORAL:  I will say this, Your Honor, I have a good

25 relationship with opposing counsel, and I'm always looking for

1   off ramps and the opportunity to be pragmatic.  And I will

2   continue to do so here.

3        THE COURT:  Yeah, it's -- sometimes people can't see

4   beyond their own position and their own interest, but boy,

5   you're all going to waste a lot of money that you could save if

6   you just found somebody that you could both trust and cede

7   authority to that person.

8        MR. TORAL:  Very well.  Your Honor, may I -- just

9   administratively, I am aware, and one of the reasons for the

10  expedited nature of this proceeding and, of course, the

11  expedited nature of this proceeding is based, at least in part,

12  on the expedited nature of the Delaware proceeding, is that

13  Your Honor's out of -- chambers is dark until I think the 17th

14  of January.  If you could let us know sort of when your last

15  possible time is to receive that order so that I can take that

16  order and go back to Delaware and have appropriate

17  communication with the Delaware Chancery Court about what

18  happened here.

19       THE COURT:  As soon as you have your -- whenever it is

20  that you have your order ready, which I hope will be relatively

21  quickly, just give it to us.  I am -- I may be away, but I will

22  still be working.

23       MR. TORAL:  Thank you, Your Honor.  I appreciate it

24  very much.

25       MR. SPENCE:  And if counsel could share that order

**4D FACTORY, INC.**

34

1   with me, Judge, before it goes in --

2          THE COURT:  Oh, no, no, no.  You -- you should agree

3   on the form of order.  If you can't agree -- if you can't

4   agree, you can submit your dueling proposals, but --

5          MR. SPENCE:  Hopefully not.

6          MR. TORAL:  I'm hoping that we can find agreement on

7   the language.  Thank you.

8          MR. SPENCE:  Thank you very much, Your Honor.

9          MR. PERSING:  Your Honor, Charles Persing speaking,

10   Subchapter V Trustee.  I've been pretty quiet.

11          So I just want to say two comments.  I am here and

12   ready, willing, and able to help in any way I can, the parties.

13   And I have not received any financial information and something

14   troubled me that this information was labeled as confidential,

15   and Debtor's counsel being a qualified attorney told me about

16   that and has not given it to me.  And although two pages is

17   deficient in my opinion on having a company with the things

18   that are going on as it is, but I have no financial information

19   to assess anything, and I would like to get some if that can be

20   arranged between the parties.

21          MR. TORAL:  Your Honor, I have no objection.  A couple

22   of things.  I haven't seen the financials.  I don't know if

23   they're in my -- if they've been provided to me at all.  I

24   understand that Mr. Spence has them.  I have no objection to

25   Mr. Spence sharing them with Mr. Persing.

**4D FACTORY, INC.**

35

1          THE COURT:  The right thing to say is we will make

2   available to Mr. Persing whatever reasonable information he's

3   asked for.

4          MR. TORAL:  That's another way of saying it, Your

5   Honor.  Thank you.

6          THE COURT:  Thank you very much.  Okay.

7          MR. SPENCE:  Thank you, Your Honor.

8          MR. PERSING:  Thank you, Your Honor.

9          THE COURT:  Okay.

10      (Whereupon these proceedings were concluded at 12:14 PM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

36

C E R T I F I C A T I O N

I, Jamie Gallagher, certify that the foregoing transcript is a
true and accurate record of the proceedings.

_____

Jamie Gallagher (CET-1243)

AAERT Certified Electronic Transcriber

eScribers

7227 North 16th Street, Suite #207

Phoenix, AZ 85020

Date:  December 14, 2023

## $

**$1.7 (1)**
19:22
**$10,000 (1)**
20:22
**$2.4 (1)**
19:24
**$20 (1)**
19:22
**$6 (2)**
20:6;26:17

## A

**Aaron (1)**
5:4
**abeyance (1)**
14:10
**able (3)**
9:5;14:8;34:12
**abundance (1)**
25:8
**acceptable (1)**
31:5
**access (3)**
21:14,17;27:14
**accomplished (1)**
24:20
**according (1)**
13:3
**account (4)**
21:9,14;24:18;
27:14
**accountant (1)**
25:23
**accounts (2)**
21:18;22:10
**acknowledge (1)**
25:6
**act (3)**
24:13,20;26:23
**acted (1)**
26:22
**acting (3)**
24:12;27:4,6
**action (13)**
6:13,22;7:1;10:14,
20;12:11;15:3;19:3;
23:21;25:1,5;31:6,23
**actions (4)**
7:8,8;21:11;32:2
**activate (1)**
15:6
**active (1)**
19:6
**activities (1)**
26:20
**activity (3)**
18:2,3;19:2
**actor (1)**
27:3

**actors (4)**
23:5;25:15;27:21,
24
**acts (6)**
13:2;16:20;21:13;
22:6;24:3;28:1
**actual (2)**
13:8;31:24
**actually (4)**
15:9;16:9;23:18;
32:7
**adjourn (1)**
29:24
**administerial (1)**
13:2
**administratively (2)**
15:19;33:9
**adult (1)**
32:20
**adversary (2)**
12:19;17:21
**advisement (1)**
11:23
**affect (4)**
14:14,25;16:1;17:4
**afternoon (1)**
30:8
**again (1)**
24:6
**against (4)**
6:22;8:3;25:1;
28:16
**ago (1)**
20:5
**agree (9)**
15:8;17:3;22:3;
31:4,8;32:20;34:2,3,4
**agreed (4)**
8:1;19:10;31:24;
32:17
**agreement (2)**
25:25;34:6
**agreements (4)**
8:13;10:3,4,9
**agrees (1)**
24:8
**ahead (1)**
20:14
**Alderdice (1)**
6:4
**allege (1)**
7:2
**allow (9)**
9:18;11:14,18;13:6;
14:20;20:14;21:9;
26:22;32:5
**allowed (5)**
15:9;24:6;26:15,16;
31:6
**allowing (2)**
11:10;14:10
**almost (1)**
12:18

**although (1)**
34:16
**always (1)**
32:25
**Americas (1)**
5:13
**analysis (1)**
15:15
**and/or (1)**
31:25
**Andrew (1)**
23:5
**anew (1)**
14:11
**Angeles (1)**
5:7
**anticipating (1)**
21:3
**apart (1)**
9:12
**apparent (1)**
19:11
**appearance (1)**
30:9
**appeared (1)**
31:24
**application (2)**
13:9;32:3
**applies (2)**
9:17;31:16
**apply (5)**
15:24;18:9,11,11;
31:17
**appoints (1)**
18:23
**appreciate (1)**
33:23
**appropriate (1)**
33:16
**approval (1)**
24:9
**approve (2)**
17:24;22:22
**approved (2)**
21:7;22:24
**ARENTFOX (10)**
5:11;21:11;22:19,
24;23:9,18,24,24;
24:15;30:9
**argue (1)**
9:18
**argument (1)**
31:11
**arguments (2)**
11:11;25:14
**arm (1)**
26:14
**around (2)**
21:23;30:20
**arranged (1)**
34:20
**articulate (1)**
31:10

**aside (1)**
23:8
**assess (1)**
34:19
**asset (7)**
7:17,20;8:25;9:2;
10:6,10,10
**assets (1)**
14:19
**assisting (1)**
24:17
**assume (1)**
11:11
**attempt (3)**
7:9;20:18,18
**attempted (1)**
24:21
**attorney (1)**
34:15
**Attorneys (1)**
5:3
**attorney's (1)**
6:22
**audacity (1)**
28:7
**August (1)**
19:2
**authority (5)**
16:17;19:10,11,13;
33:7
**automatic (13)**
7:18;8:3,13;9:17;
10:11;14:18,24;17:5;
18:5,8,10;32:3,5
**available (1)**
35:2
**Avenue (1)**
5:13
**aware (1)**
33:9
**away (2)**
11:8;33:21
**awfully (1)**
13:17

## B

**back (13)**
12:16,17,20,22;
13:1;15:9,24;17:12;
18:7;26:12;30:15;
32:23;33:16
**bad (7)**
21:13;22:6;25:15;
27:3,21,24;28:1
**bank (7)**
20:18;21:9,14,18;
22:10;24:18;27:14
**banker (4)**
20:19,24;21:5,7
**bankruptcy (16)**
8:10,21;9:3,5,7,21;
12:23;15:23;16:13;

17:14;24:9;25:8;
28:19;29:3,12;31:16
**bargain (1)**
15:19
**based (2)**
26:14;33:11
**basic (2)**
24:19;26:5
**basically (1)**
20:2;24:11
**basis (1)**
16:7
**bear (1)**
26:7
**becomes (1)**
16:21
**began (1)**
19:3
**behalf (2)**
6:3;7:16
**behind (2)**
19:6;24:22
**belong (2)**
9:3;29:11
**belonged (1)**
9:8
**benefit (1)**
15:19
**BETH (2)**
5:17;30:8
**beyond (2)**
23:17;31:15;33:4
**binding (4)**
10:15,18,22,24
**bit (3)**
9:24;25;17:15
**BLOCK (2)**
5:2;6:3
**blocked (1)**
20:17
**blocking (2)**
20:21;21:8
**Board (58)**
5:12;7:25;11:21,22,
23;12:1;13:2,2;16:10,
10;18:2,23,23;19:1,1,
4,6,9,10,11,11,13,14;
20:8;21:6,6,9,10,11,
15,17,22,25;22:5,6,
18,21,23,24;23:2,6,
11,12,15,16,19,25;
24:1,14,17,20;25:3,
16,24;26:2;27:11;
28:8;30:11
**Board's (3)**
18:24;20:18;22:13
**both (9)**
7:21,22;17:10;
27:23;28:6,14;32:22,
23;33:6
**bottom (1)**
24:15
**boy (1)**

33:4
**brief (1)**
15:16
**bringing (2)**
26:12;27:10
**Brothers (1)**
20:5
**brought (1)**
30:10
**BROWNSTEIN (3)**
5:17;30:8,9
**bum (2)**
25:14;27:21
**bunch (1)**
25:15
**burn (1)**
19:23

## C

**CA (1)**
5:7
**calls (1)**
10:12
**came (2)**
9:15;10:7
**can (16)**
9:7,15;12:6;16:25,
25;17:1;23:24;24:1;
26:24;31:16,19;
33:15;34:4,6,12,19
**cancel (1)**
9:13
**car (10)**
9:4,4,6,8,15,16,16,
19,20;14:16
**Carl (1)**
6:4
**case (16)**
8:10;10:14,21;
11:18,20;12:21;13:7,
13;14:16;16:17,22;
25:4;27:16;28:18,19;
30:10
**Castle (1)**
20:19
**category (1)**
17:23
**caused (1)**
7:3
**causes (1)**
11:4
**causing (1)**
7:14
**caution (1)**
25:8
**cede (1)**
33:6
**CEO (13)**
6:20;7:11;17:4,22;
18:1,6,7,9,9,10,23,24,
25
**certain (1)**

26:24
**certainly (3)**
7:12;22:3;31:16
**chambers (1)**
33:13
**Chancery (1)**
33:17
**chances (1)**
32:9
**Charles (2)**
6:10;34:9
**check (5)**
20:22;22:19,25;
23:2,13
**childish (1)**
28:13
**childishness (1)**
28:4
**Chrysler (1)**
16:21
**Circuit (1)**
16:22
**circumstance (1)**
31:17
**circumstances (3)**
8:16;10:13;11:19
**cite (1)**
16:22
**City (1)**
20:20
**claim (1)**
9:7
**claiming (4)**
7:21,22;9:2;15:5
**claims (2)**
22:16;28:16
**clarify (1)**
30:11
**clear (4)**
9:25;14:5;18:22;
29:15
**clearcut (1)**
9:25
**client (2)**
25:21;31:4
**clients (1)**
29:2
**closer (1)**
16:21
**Code (4)**
15:23;16:13;29:3;
31:16
**Colin (1)**
5:3
**colleague (2)**
22:7,17
**colleagues (1)**
6:4
**comfortable (1)**
16:11
**coming (3)**
21:13;24:16;32:10
**command (1)**

23:15
**comments (1)**
34:11
**common (12)**
7:24,25;13:20;
14:24;15:7,10;16:6,9;
18:12;24:10;31:25;
32:1
**common's (1)**
16:6
**communicated (1)**
22:4
**communication (1)**
33:17
**company (12)**
12:13;19:5;21:6,12;
22:25;23:2;24:12,13;
26:6,13;28:16;34:17
**compensatory (1)**
6:22
**competent (1)**
21:10
**complaint (4)**
6:16;8:6,20;15:4
**complete (1)**
20:9
**completed (1)**
15:3
**compliance (1)**
29:10
**comply (2)**
25:18;26:23
**concern (1)**
22:8
**concerns (1)**
22:16
**concluded (1)**
35:10
**condition (1)**
18:3
**conduct (1)**
22:13
**conference (1)**
27:9
**confidential (3)**
25:24,25;34:14
**confirm (1)**
23:18
**consider (2)**
25:12,14
**considerate (1)**
26:11
**consideration (1)**
31:2
**constitute (1)**
32:2
**consult (2)**
18:17;30:2
**contact (1)**
25:3
**contacting (2)**
24:23,23
**contention (1)**

15:1
**contest (1)**
23:13
**context (1)**
14:1
**contingency (2)**
10:7,11
**continue (3)**
11:14;12:3;33:2
**control (24)**
7:9,10,21,25;8:2,4,
4,7,7,22;10:7,9;11:15,
17;12:4;14:25;16:1,
10;17:4;18:3;21:9;
24:18,18;27:10
**controls (1)**
25:16
**convenient (1)**
30:22
**conversion (9)**
6:18;8:13;10:3;
14:24;15:9;16:2;17:3,
16;31:25
**convert (2)**
13:20;15:7
**converted (1)**
10:24
**convertible (1)**
8:11
**converts (1)**
16:6
**cooperate (1)**
22:18
**cooperation (3)**
18:23;21:14;25:3
**cooperative (2)**
11:25;19:4
**copy (1)**
31:19
**corner (1)**
30:20
**corporate (3)**
8:1;13:4;18:1
**Counsel (14)**
5:12;17:8,15;21:10;
22:22;24:1,2;26:19,
25;30:2,11;32:25;
33:25;34:15
**couple (2)**
14:3;34:21
**course (3)**
7:4;8:25;33:10
**COURT (84)**
5:22,25;6:5,11,13;
7:2,16;8:6,17,20;
9:14;10:6,18,22;11:9;
12:2,8,12,19,21,23;
13:6,12,17,25;14:9,
18;15:8,25;16:15,24;
17:10,18,21;18:5,6,
13,16,20;19:12,15,17,
25;20:13,24;21:16,20,
24;22:21;23:1,15,22;

24:9;25:9;27:11,23;
28:2,25;29:9,16,20,
22,24;30:4,6,14,18,
20,24;31:3,8,19;
32:12,14,16,17,20;
33:3,17,19;34:2;35:1,
6,9
**courtroom (2)**
26:25;27:2
**creative (1)**
20:4
**creditors (1)**
24:23,24,25;25:3
**crushed (1)**
24:11
**current (3)**
16:7;18:9;22:15
**currently (2)**
8:7,22
**cut (1)**
9:25

## D

**damages (7)**
6:22,23,24;7:2,4,5,
14
**dark (1)**
33:13
**date (1)**
9:6
**days (1)**
13:24
**days' (1)**
25:10
**Debtor (30)**
7:16;8:5;9:16;
10:16,18,20,22,24,25,
25;11:1,8;12:9,12,14;
16:5;20:5,6,6,7,25;
25:1;26:15,16,18,22;
27:7,17;28:16;29:2
**debtors (2)**
17:14;24:14
**Debtor's (11)**
9:13,15;11:5,7,7;
12:18;16:1;20:14,17;
29:10;34:15
**declaration (3)**
8:15;10:1;13:5
**declaratory (1)**
6:17
**declare (1)**
10:4
**defend (1)**
23:10
**defendants (4)**
6:23;7:9;23:18,20
**deficient (1)**
34:17
**Delaware (26)**
6:13,21;8:24;10:5,
14,19;12:8,16,17;

13:1,13;14:9,11;15:3,
13;16:25;23:10,15,
21;25:4;29:1;31:6,23;
33:12,16,17
**delivered (1)**
27:2
**deny (3)**
11:13,17;21:17
**derivative (1)**
6:25
**describes (1)**
8:15
**deserving (1)**
8:23
**designate (1)**
16:9
**designed (1)**
14:19
**determine (2)**
12:7;13:7
**develop (1)**
28:11
**developers (1)**
28:9
**difference (2)**
11:5,6
**different (3)**
13:22;32:1,7
**difficult (2)**
13:17;22:15
**dilution (2)**
11:4,6
**directed (1)**
23:3
**director (4)**
6:23;7:9;23:18,20
**directors (6)**
7:3;18:2,13;28:16,
17;32:1
**dischargeability (1)**
12:20
**disclosed (1)**
29:12
**disconnect (1)**
20:9
**discovery (3)**
12:6;13:23;14:3
**discretion (1)**
18:24
**discussed (1)**
31:3
**dispense (1)**
14:8
**dispute (2)**
19:18;25:7
**disputes (1)**
14:6
**distinction (3)**
9:22;11:5,6
**district (1)**
28:24
**documents (1)**
26:10

**dollars (2)**
21:2,4
**Don (1)**
20:3
**done (1)**
15:15
**door (3)**
30:15,17,19
**down (9)**
10:5,14;12:10,16,
17;13:1;16:7;17:12;
27:18
**draws (1)**
16:17
**dueling (1)**
34:4
**during (2)**
12:3;27:16

**E**

**earlier (1)**
20:13
**earth (1)**
21:16
**effect (2)**
9:1;10:7
**effort (1)**
22:9
**efforts (1)**
22:8
**Eighth (1)**
16:22
**either (2)**
19:19,19
**elect (1)**
32:1
**election (3)**
17:4;18:6,13
**eliminating (1)**
10:11
**else (5)**
9:4,11;10:8;11:16;
22:22
**emails (1)**
27:13
**engage (1)**
26:4
**enhance (1)**
10:10
**enough (2)**
20:11,12
**enter (1)**
28:23
**enterprise (3)**
7:10,12,12
**entirely (2)**
11:12,15
**entities (2)**
27:5,5
**entitle (1)**
21:17
**entitled (3)**

8:8;11:16;14:21
**entity (5)**
11:15;20:20,20;
22:12;24:19
**equity (2)**
16:4;18:11
**ESQ (2)**
5:9,17
**essence (1)**
14:10
**established (1)**
6:24
**estate (2)**
25:16;27:17
**estate's (2)**
24:23;25:15
**even (19)**
9:7,17;10:20;11:10,
15,16,18;14:23;17:1;
18:11;19:17;20:22;
22:19;25:18;27:2,12;
28:11,22;30:1
**event (1)**
17:1
**everybody (1)**
26:9
**Everyone's (1)**
21:3
**evidence (1)**
15:17
**exactly (4)**
6:14;11:1;19:15;
31:20
**example (1)**
9:14
**except (1)**
13:8
**Excuse (2)**
6:9;23:7
**exercise (2)**
11:16;12:3
**existing (1)**
16:6
**expedited (3)**
33:10,11,12
**expert (2)**
7:14;13:4
**Explain (1)**
18:5
**extent (1)**
11:10
**extremely (1)**
28:19

**F**

**face (2)**
7:11,12
**faced (1)**
9:24
**fact (6)**
7:23;8:22;9:23,23;
15:18;28:4

**Factory (1)**
5:22
**facts (2)**
26:6;31:17
**factually (1)**
16:19
**fall (1)**
17:23
**fees (3)**
6:22;23:13,16
**fiasco (1)**
22:20
**filed (4)**
8:9;9:6;10:17;
15:17
**filing (2)**
9:20;11:22
**final (2)**
6:21;28:24
**Finally (1)**
25:20
**finances (1)**
7:10
**financial (4)**
25:22;27:1;34:13,
18
**financials (10)**
19:8,8,9;21:22;
22:4,5;24:19;27:2,13;
34:22
**financing (2)**
19:7;24:4
**find (2)**
13:15;34:6
**finding (2)**
10:19;13:12
**fine (1)**
16:17
**fingers (1)**
27:24
**finish (2)**
12:21,21
**firm (1)**
6:3
**first (6)**
6:17;10:4,15;25:9;
26:8;27:9
**five (1)**
8:5
**flagship (1)**
7:7
**Floor (1)**
5:14
**Flower (1)**
5:5
**focus (2)**
9:14;11:9
**fold (1)**
26:12
**foot (1)**
26:24
**Foran (1)**
5:3

**force (1)**
13:1
**forced (1)**
20:23
**forecasted (1)**
15:4
**foreign (1)**
17:15
**forgiveness (1)**
25:12
**form (4)**
12:1;19:12;32:17;
34:3
**formed (1)**
26:14
**forms (1)**
17:22
**forth (1)**
6:16
**forward (4)**
10:17;14:14;31:6,
23
**found (2)**
19:23;33:6
**founder (1)**
7:11
**four (2)**
19:8;20:5
**frankly (1)**
19:5
**front (1)**
31:24
**frustrating (1)**
27:18
**full (1)**
24:5
**full-court (1)**
25:2
**fully (1)**
17:7
**functions (1)**
22:1
**fund (1)**
26:20
**fundamental (3)**
15:16;19:16;22:10
**funded (1)**
26:17
**funding (1)**
24:9
**funds (1)**
22:25
**further (3)**
13:8,24;32:3

**G**

**game (1)**
21:4
**garbage (1)**
28:14
**gave (1)**
9:10

**generous (1)**
26:11
**gets (2)**
28:10;29:12
**gist (1)**
20:11
**given (5)**
6:25;22:1,15;23:21;
34:16
**gives (2)**
7:24,25
**giving (1)**
29:2
**goal (1)**
20:14
**goes (3)**
16:7;22:11;34:1
**Good (11)**
5:23,25;6:1,2,5;
21:19;24:12,13;30:6,
8;32:24
**govern (1)**
24:14
**governance (1)**
26:4
**grant (1)**
24:5
**granted (1)**
23:14
**granting (2)**
17:6;32:4
**great (2)**
21:3;30:1
**Grossman (1)**
23:5
**group (3)**
26:3,13,17
**grown (1)**
28:21
**guess (2)**
20:10;31:3

**H**

**Hahn (2)**
8:14;13:3
**hamstrung (1)**
21:15
**hand (1)**
28:9
**handled (1)**
23:15
**happen (4)**
14:8;16:19;29:1;
32:5
**happened (2)**
17:1;33:18
**happening (1)**
28:15
**hard (1)**
13:12
**harm (2)**
24:21;26:1

**head (1)**
20:4
**heads (1)**
25:21
**heard (1)**
20:21
**hearing (1)**
31:20
**heaven's (1)**
21:24
**help (2)**
26:20;34:12
**hire (2)**
20:18;21:5
**hiring (1)**
18:10
**hoisted (1)**
19:7
**hold (2)**
11:14;14:9
**holders (5)**
15:6,12,18;16:9;
17:16
**holding (1)**
21:12
**honest (1)**
17:16
**Honor (54)**
5:23;6:2,9,10,12,
15;7:1,4,22;8:15;9:9;
11:19;12:15,24;
13:23;15:11,24;
16:12,16;17:13,20,25;
18:15,19,22;20:20;
21:21;22:3;23:8;24:4;
26:21;27:19,20,25;
29:8,14,18;30:8,13;
31:9,10,14;32:11,15,
18,24;33:8,23;34:8,9,
21;35:5,7,8
**Honor's (3)**
16:13,23;33:13
**Honour (1)**
23:10
**hope (2)**
32:8;33:20
**Hopefully (1)**
34:5
**hoping (1)**
34:6
**Horowitz (1)**
23:10
**host (1)**
27:12
**hostage (1)**
21:13
**Hyperbole (1)**
23:8

**I**

**IB (1)**
20:22

**idea (1)**
28:10
**ignored (2)**
27:12,13
**immediate (1)**
16:4
**imminent (1)**
20:15
**impact (2)**
16:4,11
**imperiling (1)**
19:5
**implement (1)**
32:2
**implicate (1)**
32:2
**implicated (1)**
16:14
**implicates (1)**
16:23
**imploring (1)**
27:11
**important (1)**
15:11
**incredibly (1)**
24:16
**indicating (1)**
16:12
**individual (3)**
23:20;28:16,17
**individuals (1)**
12:13
**information (11)**
21:17;22:14;25:17,
18,19;29:2,11;34:13,
14,18;35:2
**injunction (1)**
19:13
**injunctive (2)**
6:17,19
**insist (1)**
26:23
**instance (2)**
10:4,15
**instead (2)**
25:12,14
**instigate (1)**
25:1
**instructed (2)**
23:12;24:7
**integrity (2)**
22:11,13
**intellectual (1)**
26:9
**intended (1)**
15:3
**interest (4)**
7:19;23:10;28:5;
33:4
**interference (1)**
25:4
**interpreted (2)**
17:6;32:4

**intersection (1)**
22:12
**into (8)**
7:23;17:23;20:6;
26:12,15,16,17;28:11
**invested (2)**
7:13;20:6
**investigate (1)**
11:21
**investigation (1)**
12:3
**investment (4)**
20:18,19;21:5,7
**investor (1)**
17:14
**investors (1)**
7:13
**involved (2)**
12:14;27:5
**IP (1)**
26:16
**issuance (2)**
13:8;15:20
**issue (3)**
13:14;15:18;16:24
**issued (6)**
8:9,21;11:13;14:23;
17:2;24:10
**issues (4)**
8:18;22:11;23:3;
28:20

**J**

**Jacob (1)**
6:4
**January (1)**
33:14
**Javarone (5)**
7:8;20:10;22:9;
23:9;26:11
**JENNER (2)**
5:2;6:3
**job (2)**
17:10,10
**joint (1)**
30:5
**Judge (13)**
9:23;10:15;12:5;
14:17;19:22;24:3,22;
25:11;26:6;27:8,16;
31:1;34:1
**judges (1)**
12:20
**judgment (2)**
12:22;28:24
**jurisdiction (6)**
16:13,23;28:15,17,
22,23

**K**

**keep (4)**

14:20;25:25;27:11,
11
**kind (4)**
25:7;26:11;30:3;
32:23
**knock (2)**
30:15,17

**L**

**labeled (1)**
34:14
**lack (1)**
22:10
**Lackaff (1)**
5:3
**language (1)**
34:7
**last (2)**
15:17;33:14
**launch (10)**
7:7;8:14,14;10:1,2,
16,23;12:7;14:7;
20:15
**Law (4)**
5:24;6:3;15:23;
16:21
**leading (1)**
21:13
**leads (1)**
7:23
**learned (1)**
22:6
**least (3)**
20:3;22:15;33:11
**leaving (1)**
26:9
**left (1)**
19:23
**legally (5)**
8:8;11:16;14:21;
16:18,18
**legitimate (3)**
14:5,19;28:5
**less (1)**
16:8
**letter (3)**
25:6,6;27:22
**letting (1)**
31:2
**level (2)**
18:11;24:10
**lifted (1)**
12:10
**likely (1)**
16:19
**line (3)**
16:18;22:15;24:15
**listening (1)**
19:14
**litigants (1)**
15:13
**litigate (1)**

28:21
little (2)
9:24;17:15
LLP (2)
5:2,11
loan (2)
26:19,20
Long (10)
5:3;6:20;12:2;
18:25;20:3,4;23:4;
26:5,13;31:11
longer (1)
11:2
look (1)
8:14
looked (1)
15:15
looking (2)
32:19,25
Los (1)
5:7
lose (1)
9:1
loss (1)
8:4
lot (2)
28:3;33:5
love (1)
13:22
luckily (1)
25:23

**M**

Machine (8)
6:20,25;7:6;16:5;
26:15,16,17;27:5
majority (2)
11:2;28:8
making (1)
14:25
manage (1)
20:8
management (7)
21:12,17,22;22:2;
23:12,16,17
managers (1)
20:2
many (1)
7:11
Mark (5)
5:3;6:20;20:3,4;
23:4
market (2)
21:3,4
may (8)
10:25;13:11;15:6;
19:17;31:21;32:19;
33:8,21
maybe (4)
20:2,16;25:13;32:7
mean (16)
8:23;9:1;10:22,24,

25;12:10,13;15:5;
21:6,15,25;22:20,20;
23:24;24:12;26:2
meaning (1)
24:6
meant (1)
14:19
meantime (1)
29:2
Media (2)
26:13,17
member (2)
19:1,2
members (3)
24:14,18;25:17
members' (1)
23:16
MEP (2)
26:19,20
mere (1)
8:22
merits (2)
13:7;14:1
might (15)
11:15,16;12:24;
13:10;14:14,21;
16:13,15;18:10;
20:15,20;28:5,18;
30:1;31:11
million (5)
19:22,22,24;20:6;
26:18
millions (3)
7:13;21:2,4
mind (1)
31:12
mindful (1)
31:13
ministerial (1)
13:3
minority (6)
7:25;11:25;19:3;
20:1,1;26:2
minute (1)
17:17
minutes (2)
29:24;30:15
moment (4)
17:13;18:18;22:15;
29:18
money (3)
20:7;28:11;33:5
month (1)
19:24
months (1)
19:9
months' (1)
14:3
more (6)
9:24,25;21:2,4;
24:3;31:21
morning (5)
5:23,25;6:1,2,5

motion (3)
14:2;23:14;25:13
movant (1)
6:3
movants (1)
15:13
moved (1)
26:15
movement (1)
26:16
moving (2)
16:19;18:12
much (5)
6:12;27:20;33:24;
34:8;35:6
mutiny (2)
26:8,8

**N**

name (2)
20:19;30:21
Naomi (1)
5:3
nature (4)
22:16;33:10,11,12
navigation (1)
22:11
necessarily (2)
8:23;9:13
need (11)
6:6;17:23;20:24;
21:1,4;22:4,21,21;
27:13,14;32:12
needs (2)
21:11;22:14
Neon (23)
6:20,25;7:6,19,21;
8:4;16:5;19:18,25;
20:4,15,16,24,25;
24:21;26:2,2,12,15,
16,17,17;27:5
network (6)
8:13,14;10:1,2,16;
12:7
nevertheless (1)
13:14
New (10)
5:15;16:9;17:4;
18:6,10;19:2,3;20:20;
24:10;25:20
next (3)
15:21,21,23
night (1)
15:17
nine (2)
13:24;25:10
nobody (2)
9:7;32:22
non- (1)
28:15
Nonetheless (1)
23:12

Nonis (1)
5:4
nonsense (1)
28:13
Norby (1)
20:3
notes (1)
31:20
notice (1)
25:10
notices (1)
27:12
November (3)
21:7;25:5;27:22
nuanced (1)
9:24
number (1)
11:1
NY (1)
5:15

**O**

objection (2)
34:21,24
obligated (1)
29:3
obligations (1)
29:10
obvious (1)
16:5
off (1)
33:1
Office (1)
5:24
old (2)
18:7;25:20
One (10)
7:22;8:2;13:10;
16:3;17:21;19:10;
26:18;28:6;29:18;
33:9
ongoing (1)
7:6
only (2)
25:24;30:12
opine (1)
13:24
opinion (1)
34:17
opportunity (2)
13:23;33:1
opposed (1)
16:19
opposing (1)
32:25
option (1)
15:6
oral (1)
31:11
order (12)
16:10,24;17:5;18:7;
31:15;32:4,17;33:15,

16,20,25;34:3
ordinary (1)
21:25
organized (1)
18:2
ought (3)
11:10,12;19:19
out (6)
8:5;9:13;19:23;
20:7;26:7;33:13
outlined (1)
31:7
over (10)
7:10;14:20;19:22;
21:5;22:9,9;27:1;
28:15,17;29:12
overall (1)
26:3
own (4)
9:2;14:10;33:4,4
owner (1)
28:8
ownership (3)
7:19;9:11,12
owns (1)
11:1

**P**

pages (1)
34:16
pale (1)
23:17
Panther (1)
16:22
papers (3)
6:6;7:17;20:14
paraphrase (1)
22:17
part (1)
33:11
participation (1)
24:5
particular (1)
25:13
parties (8)
15:12;17:3;31:14,
22,23;32:6;34:12,20
party (1)
10:20
past (2)
11:13;26:22
pattern (2)
9:23,23
pay (3)
18:25;23:13,16
people (5)
16:10;28:4,5,20;
33:3
per (1)
19:24
percent (3)
7:23,24;16:7

**percentage (1)**
16:7
**perfectly (1)**
31:21
**Perhaps (1)**
28:6
**period (2)**
12:3,6
**permission (1)**
25:12
**PERSING (11)**
6:9,10,11,12;25:23,
23;34:9,9,25;35:2,8
**person (2)**
9:15;33:7
**perspective (2)**
25:15,16
**petition (1)**
9:7
**petulant (1)**
28:4
**ph (1)**
8:14
**phone (1)**
26:19
**Picard (1)**
16:21
**place (3)**
11:18;18:7;31:7
**Placement (1)**
20:19
**plaintiffs (1)**
6:21
**pleasant (1)**
27:7
**Please (2)**
27:14;30:24
**pm (2)**
30:23;35:10
**pocket (1)**
12:2
**point (3)**
17:9;19:9;24:20
**pointing (1)**
27:24
**points (1)**
17:11
**position (1)**
33:4
**positions (1)**
31:13
**possess (2)**
8:7,22
**possessed (1)**
9:2
**possession (3)**
9:6,13;14:20
**possibility (3)**
10:8;12:16,23
**possible (1)**
33:15
**post-petition (1)**
7:8

**potentially (1)**
16:3
**power (2)**
28:23;29:12
**pragmatic (1)**
33:1
**precedent (1)**
18:3
**preferred (17)**
6:18;8:10,12;11:12;
13:19,19;14:23;
15:10,12,20;16:6;
17:2,16;18:12;24:5;
31:25;32:1
**preliminary (1)**
14:1
**prepare (1)**
13:24
**present (1)**
7:6
**presented (1)**
31:18
**preserved (1)**
8:25
**press (3)**
17:10;22:2;25:2
**pressing (2)**
16:16;17:8
**pre-trial (1)**
14:10
**pretty (1)**
34:10
**prevented (1)**
24:15
**previously (1)**
19:1
**prior (1)**
8:21
**privity (1)**
24:24
**probably (4)**
21:2;26:25;28:22;
31:19
**problem (4)**
6:11;14:22;19:16;
23:6
**problems (1)**
32:21
**proceed (3)**
16:25;25:7;30:16
**proceeding (6)**
6:24;12:19,19;
33:10,11,12
**proceedings (1)**
35:10
**process (1)**
7:7
**product (2)**
7:7;20:15
**project (2)**
28:9,11
**proof (2)**
7:5,14

**proper (1)**
26:4
**property (2)**
8:23;26:9
**proposals (1)**
34:4
**proposed (2)**
6:8;31:2
**protect (5)**
10:10;11:10;14:19;
17:7;26:3
**protected (1)**
22:13
**protection (4)**
7:18,20;8:24;31:5
**protections (2)**
31:7,11
**protects (1)**
8:3
**prototypical (1)**
18:1
**prove (1)**
9:15
**provide (1)**
29:3
**provided (4)**
21:22;22:4,5;34:23
**providing (1)**
22:25
**purchased (1)**
20:5
**purport (2)**
23:19,20
**purports (1)**
24:5
**purpose (1)**
30:12
**pursue (1)**
6:14
**put (8)**
9:10;12:5;13:4;
15:16;28:11;31:20,
21;32:16
**putting (1)**
18:7

---

**Q**

**qualified (1)**
34:15
**quell (1)**
27:10
**quickly (2)**
14:8;33:21
**quiet (1)**
34:10
**quite (2)**
14:5;19:5
**quote/unquote (1)**
19:8

---

**R**

**raise (1)**
17:20
**raised (3)**
19:21;24:6;27:9
**ramps (1)**
33:1
**rate (1)**
19:23
**read (4)**
6:6;8:19;15:23;
32:8
**ready (5)**
30:16;31:4,13;
33:20;34:12
**real (2)**
23:6;27:17
**realizes (1)**
24:4
**really (6)**
14:7;21:19;28:3,13;
32:20,22
**reason (1)**
24:24
**reasonable (1)**
35:2
**reasonably (1)**
26:22
**reasons (2)**
26:18;33:9
**receive (1)**
33:15
**received (2)**
15:19;34:13
**Recess (1)**
30:23
**recognizing (1)**
6:18
**record (5)**
11:23,24;31:3,7,15
**recovered (1)**
6:24
**redone (1)**
28:24
**reduce (1)**
16:4
**refusing (1)**
23:2
**regard (1)**
15:25
**regret (1)**
19:17
**regularly (1)**
22:1
**related (1)**
28:18
**relationship (1)**
32:25
**relatively (1)**
33:20
**relief (15)**
6:14,15,18,19;9:18;
11:14,17;13:7;14:2;
17:5,6,22,23;23:14;

32:5
**remedies (1)**
6:17
**remedy (2)**
6:19,21
**remembered (1)**
20:13
**removed (2)**
18:25;19:1
**repeat (1)**
6:7
**reply (1)**
15:16
**represent (3)**
23:19,20;31:14
**represented (1)**
21:10
**represents (2)**
23:19,25
**repurchased (1)**
26:14
**requested (2)**
21:23;23:14
**requesting (1)**
19:9
**require (4)**
17:5;24:9;29:13;
32:3
**resenting (2)**
28:4,9
**resolution (1)**
30:5
**respect (2)**
7:13;18:11
**response (1)**
23:21
**responsibility (1)**
22:14
**restoration (2)**
18:1,9
**restore (1)**
17:22
**retain (2)**
20:22,24
**retained (3)**
22:20;23:9,11
**retention (3)**
21:8;22:22,24
**retroactive (1)**
10:1
**returned (1)**
6:25
**returns (1)**
27:3
**ridiculous (3)**
22:20;23:7,9
**right (26)**
5:22;6:6;7:21;8:11;
9:8;10:2,3;11:4,11,12,
15,22;12:4;13:16,20;
14:15,16;15:6;17:18;
18:16,16;19:19;
29:13;31:17;32:16;

35:1
**rightful (1)**
22:14
**rightfully (1)**
9:3
**rights (3)**
14:14;15:12,18
**risk (3)**
8:2;29:5;31:13
**Robert (1)**
5:23
**Rule (1)**
25:18
**rules (1)**
29:12
**ruling (3)**
16:25;17:2;19:12
**run (2)**
24:6;32:23
**rush (2)**
25:14;27:21

### S

**SAFE (7)**
8:12;10:3,4,9;
13:19;15:5;17:16
**safeties (1)**
12:25
**sakes (1)**
21:25
**same (2)**
11:1,7
**save (1)**
33:5
**saying (9)**
11:13,17,20,20;
12:25;14:22,23;23:1;
35:4
**scenario (1)**
9:9
**scenes (1)**
24:22
**SCHIFF (2)**
5:11;30:9
**seated (1)**
30:24
**seats (2)**
8:5;20:8
**second (2)**
6:19;26:8
**Section (1)**
14:18
**securities (2)**
13:8,15
**seek (2)**
6:19,22
**seeking (3)**
6:14,16;17:22
**seem (5)**
7:17,19;14:15,16;
24:25
**seems (3)**

9:25;14:5,15
**self-interest (3)**
27:4,4,6
**sell (2)**
20:16,25
**send (2)**
12:20;25:22
**sending (1)**
27:11
**sense (3)**
10:18;14:12;28:3
**sent (1)**
27:22
**separate (1)**
9:12
**serves (1)**
18:24
**set (1)**
6:16
**shape (2)**
12:1;19:12
**share (2)**
13:19;33:25
**shareholders (7)**
8:1;11:25;19:3;
20:1,2;26:2,3
**shares (15)**
8:8,10,12;10:23;
11:1,3,5,7,7,12;14:23,
25;15:10,10;20:25
**sharing (1)**
34:25
**shoe (1)**
26:24
**short (2)**
9:21;12:6
**show (3)**
9:18;11:24,24
**Shrapnel (1)**
21:2,3
**shrift (1)**
9:21
**side (1)**
28:6
**sides (2)**
28:6,14
**Silence (1)**
27:14
**sit (1)**
27:18
**situation (4)**
9:25;24:2,2;27:8
**solve (1)**
32:21
**somebody (9)**
9:4;10:8;11:16;
18:17;22:22;23:1;
28:6,18;33:6
**somebody's (1)**
28:11
**somehow (1)**
28:18
**someone (1)**

9:11
**sometime (1)**
8:9
**sometimes (1)**
33:3
**somewhere (1)**
21:23
**soon (1)**
33:19
**sophisticated (1)**
24:17
**sorry (3)**
6:9,10;11:8
**sort (2)**
9:10;33:14
**sounds (2)**
27:23;28:14
**South (1)**
5:5
**speak (2)**
15:14;24:8
**speaking (2)**
30:12;34:9
**Special (2)**
5:12;30:11
**spectrum (1)**
16:20
**Spence (54)**
5:23,23,24;6:1;7:4,
22;8:12,19;9:9,22;
10:13,19;11:4,19;
12:5,9,15;13:10,16,
18;14:17;15:2;17:8,
12,19;18:18,21;19:16,
21;20:1,17;21:1,19;
22:17,23;23:4,23;
25:7;29:18,21,23;
30:1,5,17,19,22;31:1;
32:18;33:25;34:5,8,
24,25;35:7
**sprung (1)**
11:22
**squarely (1)**
9:10
**stake (3)**
16:4,6;20:16
**stand (2)**
29:9;30:25
**standing (3)**
25:10;26:25;27:1
**start (1)**
14:11
**state (3)**
7:18;12:19,20
**states (1)**
6:18
**stay (22)**
8:3,18;9:17,18;
10:12;11:14,17,18;
12:10,11;13:7,7;14:1,
18,24;17:5;18:5,8,10;
31:5;32:3,5
**Steakhouse (2)**

9:11;10:21
**step (12)**
13:16,18,18,21;
15:2,4,16,21,21,23;
16:8;32:23
**steps (1)**
13:22
**still (3)**
13:14;31:5;33:22
**stock (19)**
6:19;7:24,24,25;
12:18;13:19,20;15:7;
17:2,4,17;24:5,10,11;
25:20;31:25,25;32:1,
7
**stonewalling (1)**
23:6
**stop (4)**
12:22;14:24;18:6,6
**storing (1)**
6:20
**Street (3)**
5:5;9:11;10:21
**strong (2)**
26:14;28:3
**struck (1)**
23:16
**structure (1)**
8:1
**stuff (1)**
25:20
**Subchapter (2)**
6:10;34:10
**subject (5)**
7:5,14,18,20;10:8
**submit (2)**
32:17;34:4
**submitted (1)**
8:15
**suggest (4)**
7:17,20;12:24;
13:11
**suggesting (1)**
13:6
**suit (1)**
8:24
**Suite (1)**
5:6
**summer (1)**
19:22
**supervise (1)**
20:7
**supervision (2)**
27:16;32:21
**supposed (2)**
13:14;21:25
**sure (4)**
6:7;21:12;22:12;
29:6
**surrounding (1)**
24:3
**suspended (1)**
18:25

### T

**tactics (1)**
26:15
**tails (1)**
25:21
**talk (2)**
8:17;25:21
**talking (3)**
10:6;18:14;22:7
**tax (1)**
27:2
**team (1)**
20:4
**telegraphed (1)**
25:5
**telling (1)**
29:4
**ten (2)**
29:24;30:15
**tens (1)**
21:2
**terminating (1)**
7:10
**terms (3)**
8:7;15:20;17:15
**testimony (1)**
7:15
**thanked (1)**
26:10
**theory (2)**
8:6,20
**thin (1)**
28:19
**third (2)**
6:21;15:12
**third-party (1)**
11:22
**though (1)**
27:12
**thought (3)**
12:15;13:10;20:13
**threaten (1)**
8:4
**threatened (2)**
8:25;9:12
**three (3)**
6:17;8:5;25:16
**tier (1)**
7:13
**times (2)**
7:16,19
**today (2)**
31:11,24
**TODD (2)**
5:9;6:2
**told (1)**
34:15
**took (2)**
11:23;26:8
**top (1)**
31:12

**TORAL (30)**
5:9;6:2,2,15;15:11;
16:3,16;17:25;18:8,
15;21:21;22:3;23:8;
24:7;27:20,25;29:8,
14,17;31:9;32:11,13,
15,19,24;33:8,23;
34:6,21;35:4
**Toral's (1)**
25:5
**totally (1)**
27:13
**trade (1)**
25:24
**transcript (2)**
31:12,20
**trial (4)**
7:5,14;12:21;14:1
**trigger (2)**
13:1;14:7
**triggering (1)**
17:1
**troubled (1)**
34:14
**true (1)**
27:25
**trust (3)**
22:10;32:22;33:6
**Trustee (2)**
6:10;34:10
**try (1)**
27:10
**trying (14)**
7:7;14:13;20:7;
21:5;22:12;24:13,14;
25:1,17;26:1,1,3;
27:10,11
**two (5)**
7:8;20:3;23:5;
34:11,16
**two-page (2)**
25:22;27:1

**U**

**under (11)**
8:12;9:9;10:3,4,9,
13;11:19,23;13:19;
27:16;29:3
**undercut (1)**
27:7
**underlying (1)**
19:18
**understood (1)**
31:22
**undertaken (1)**
16:20
**unfair (1)**
26:4
**unfortunate (1)**
27:20
**unfortunately (1)**
28:21

**unpleasant (1)**
27:8
**unreasonably (1)**
26:23
**up (4)**
14:7;21:13;28:21;
30:10
**upon (3)**
8:13;13:8;19:7
**upset (1)**
28:7
**use (3)**
25:19,24;31:25
**used (1)**
11:2
**useful (1)**
31:9
**using (3)**
9:6,15,20

**V**

**value (2)**
7:18,24
**veto (2)**
12:2;29:11
**video (1)**
21:3
**view (1)**
32:7
**violation (1)**
12:11
**vote (1)**
18:24

**W**

**wants (3)**
22:13;28:8,8
**Warner (1)**
20:5
**waste (1)**
33:5
**watching (1)**
27:17
**way (14)**
10:16,17;11:25;
12:17;14:6;15:23;
19:12;24:10;26:1,6;
27:7;29:10;34:12;
35:4
**ways (1)**
7:11
**Wedoff (1)**
6:4
**what's (5)**
20:8;21:20;23:22;
24:1;28:5
**whenever (1)**
33:19
**Whereupon (1)**
35:10
**whole (1)**

13:21
**Who's (1)**
19:25
**willing (1)**
34:12
**win (1)**
8:24
**wish (2)**
18:16;25:11
**without (4)**
11:6;22:1;27:10;
32:10
**won (1)**
13:13
**working (1)**
33:22
**works (1)**
23:1
**worth (1)**
14:3
**write (5)**
20:22;22:19,24;
23:2,13

**Y**

**years (1)**
20:5
**yesterday (1)**
19:23
**York (2)**
5:15;20:20

**1**

**1 (1)**
7:13
**10019 (1)**
5:15
**10th (1)**
25:5
**11:43 (1)**
30:23
**12:08 (1)**
30:23
**12:14 (1)**
35:10
**1301 (1)**
5:13
**13th (1)**
21:7
**17th (1)**
33:13

**2**

**2015.3 (1)**
25:19
**2021 (1)**
26:10

**3**

**3300 (1)**
5:6
**362a3 (1)**
14:18

**4**

**42nd (1)**
5:14
**48th (2)**
9:10;10:20
**4D (2)**
5:22,24

**5**

**515 (1)**
5:5

**6**

**60 (3)**
7:23,24;16:7

**9**

**90071 (1)**
5:7