UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
In re:                                                   :  Chapter 11
                                                         :
                                                         :  Case No. 23-11618-MEW
4D Factory, Inc., et al.                                 :
                                                         :
            Debtors[1].                                  :
                                                         :
                                                         :
-------------------------------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF MEP CAPITAL HOLDINGS III, L.P.'S MOTION TO REMOVE DEBTORS AS DEBTORS IN POSSESSION PURSUANT TO 11 U.S.C. § 1185(a)

---

[1] The debtors in these Chapter 11 cases are 4D Factory Inc. and The 4D Factory LLC.

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................... 1

   A. General Background Relating to Debtors and Affiliates ..................................... 1

   B. MEP Is A Party In Interest In These Proceedings ............................................... 3

   C. Debtors and Javarone Have Engaged In "Fraud, Dishonesty, Incompetence, and Gross Mismanagement" of Debtor's Operations and Assets ........................................ 4

      i. Javarone Either Usurped A Corporate Opportunity Of Debtor To Receive 15 Million SHRAP Tokens Or Converted That Property From Debtor. ............................ 4

      ii. Under Javarone's Management, The Value of Debtors' Assets Have Substantially Diminished. ................................................................................................................ 5

      iii. Javarone and Debtors Have A History Of Bad Faith And Delay ................. 7

III. LEGAL ARGUMENT ............................................................................................. 9

   A. Legal Standard ..................................................................................................... 9

   B. Debtors' Managing Member, Javarone, Has Repeatedly Participated In Self-dealing And Conflicted Transactions ................................................................................. 11

   C. The Debtors' Managing Member, Javarone, Has Also Grossly Mismanaged And Caused Severe Diminution of The Debtors' Assets. ............................................ 12

   D. The Debtors' Managing Member, Javarone, Has Failed To Adequately Or Timely Administer the Bankruptcy Estate. ...................................................................... 13

IV. CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

*Cases*

*In re Ashley River Consulting LLC*,
 2015 WL 1540941 (Bankr. S.D.N.Y. Mar. 31, 2015) ................................................................ 9

*In re ComedyMX, LLC*,
 647 B.R. (Bankr. D. Del. 2022) ............................................................................................... 10

*In re Corinthian Commc'ns, Inc.*,
 642 B.R. (Bankr. S.D.N.Y. 2022) ............................................................................................ 10

*In re Duling Sons, Inc.*,
 650 B.R. (Bankr. D.S.D. 2023) ..................................................................................... 10, 11, 13

*In re Fall*,
 205 B.R. (Bankr. N. D. Ohio 2009) ......................................................................................... 13

*In re Neosho Concrete Prod. Co.*,
 2021 WL 1821444 (Bankr. W.D. Mo. May 6, 2021) .......................................................... 10, 11

*In re No Rust Rebar, Inc.*,
 641 B.R. (Bankr. S.D. Fla. 2022) ......................................................................................... 10, 11

*In re Ozcelebi*,
 639 B.R. (Bankr. S.D. Tex. 2022) ............................................................................................ 12

*In re Peak Serum, Inc.*,
 623 B.R. (Bankr. D. Colo. 2020) ......................................................................................... 11, 14

*In re Ronald Kern & Sons*,
 2002 WL 162890 (W.D.N.Y. June 11, 2002) .......................................................................... 15

*Long, et al. v. Javarone et al.*,
 C.A. No. 2023-1186-MTZ (Del. Ch. Nov. 27, 2023) ................................................................ 7

*Rules*

11 U.S.C. § 1183(b)(5) ................................................................................................................ 11

11 U.S.C. § 1185 ..................................................................................................................... 9, 15

11 U.S.C. § 308(b) ...................................................................................................................... 14

11 U.S.C. § 1106 ........................................................................................................................... 2

11 U.S.C. § 1107 ........................................................................................................................... 2

**11 U.S.C. § 1116** ........................................................................................................ 2

**11 U.S.C. § 1184** ........................................................................................................ 2

**11 U.S.C. § 1101** ........................................................................................................ 1

**11 U.S.C. § 1102** ........................................................................................................11

Federal Rule of Bankruptcy 2015(a)(6) ...................................................................... 14

This memorandum of law is respectfully filed in support of the motion ("Motion") of MEP Capital Holdings III, L.P. ("MEP") for an order removing debtors 4D Factory Inc. ("4D Inc.") and The 4D Factory LLC ("4D LLC" or "Debtor" and collectively with 4D Inc., "Debtors") as debtors in possession in these consolidated and jointly-administered Subchapter V Chapter 11 cases pursuant to Section 1185(a) of the United States Bankruptcy Code (11 U.S.C. §§1101, *et seq.*, hereinafter the "Bankruptcy Code"). In support thereof, MEP respectfully represents and states as follows:

## I. INTRODUCTION

There is substantial evidence that the Debtors herein have engaged in the type of "fraud, dishonesty, incompetence, or gross mismanagement" of their affairs which warrants their removal as debtors in possession pursuant to Section 1185(a) of the Bankruptcy Code. 11 U.S.C. § 1185(a). Moreover, Debtors' principal has, in breach of his fiduciary duties to both Debtors and relevant parties in interest, engaged in a number of self-serving transactions inimical to the best interests of Debtors and their creditors, including MEP. MEP therefore respectfully requests the removal of Debtors as debtors in possession in this matter, and a corresponding enlargement of the current subchapter V trustee's duties and responsibilities under 11 U.S.C. § 1183(b)(5) to include the operation of Debtors. As shown below, good cause exists to do so.

## II. FACTUAL BACKGROUND

**A.    General Background Relating to Debtors and Affiliates**

1.    On October 10, 2023 (the "Petition Date"), both of the Debtors filed voluntary petitions for bankruptcy (each a "Petition" and collectively the "Petitions"). (Docs. No. 1). *See* Declaration of Lauren F. McKelvey dated October 9, 2024 submitted herewith as **Exhibit 1** (the "McKelvey Decl."), at ¶¶ 3-4 and Exhibits ("Ex.") A and B. Debtors elected to proceed under subchapter V of Chapter 11 of the Bankruptcy Code ("Subchapter V"). *Id.* As debtors in

possession, Debtors are required to, among other things, investigate the financial affairs of the debtor, be accountable for all property received by the estate, facilitate the development of a consensual plan of reorganization, and timely file schedules and statements of financial affairs with the Court. *See* 11 U.S.C. §§ 1106, 1107, 1116, 1184.

2. 4D Inc. is a wholly owned subsidiary of 4D LLC, which was established on the eve of these bankruptcy proceedings. *See* McKelvey Decl., ¶3 and Ex. A (Petition in Case No. 23-11618-mew). 4D Inc. has no assets. *See* Monthly Operating Report filed on March 18, 2024 (Doc. 84). A copy of the March 18, 2024 monthly operating report for 4D Inc. is attached to the McKelvey Decl. as Ex. Q.

3. 4D LLC is a holding company whose only other assets are its equity interests in three companies – Neon Machine, Inc. ("Neon Machine"), Neon Media, LLC ("Neon Media"), and Centili Ltd. ("Centili") – and rights attendant to such equity interests. *See* McKelvey Decl., ¶4, Ex. B (Petition in Case No. 23-11619-mew). 4D LLC has no employees. *Id*.

4. Cort Javarone ("Javarone") is the president and sole director of 4D Inc. and managing member of 4D LLC. *See* 4D Inc. Schedules and Statement of Financial Affairs filed on November 13, 2023 (Doc. 19), at pp. 1 and 17; McKelvey Decl., ¶3 and Ex. A at p. 5 (Petition in Case No. 23-11618-mew). A copy of the 4D Inc.'s Schedules and Statement of Financial Affairs is attached to the McKelvey Decl. as Ex. C.

5. Javarone also owns and/or operates a management company, 4D Management, LLC ("4D Management"). *See* August 14, 2024 Letter from Debtors' counsel, Robert J. Spence, Esq., to the Court (Doc. 118) ("Spence Letter"), at p. 2. A copy of the Spence Letter is attached to the McKelvey Decl. as Ex. P.

6.     As of the Petition Date, 4D LLC claims to have had a 60% equity interest in Neon Machine, a Delaware corporation formed to develop *Shrapnel*, a first-person shooter video game with a cryptocurrency component known as "SHRAP Tokens." *See* Amended Schedule A/B (Doc. 87-1) attached as Ex. E to McKelvey Decl., at p. 3; *see also* Amended Complaint in Adversary Proceeding[2] (Adv. Pro. Doc. 4), ¶37.

7.     4D LLC also had, as of the Petition Date, a controlling equity interest in Centili, a corporation incorporated under the laws of England and based in the U.K. As of March 24, 2024, according to Javarone, Centili was valued at approximately $20,000,000. *See* McKelvey Decl., Ex. E (Amended Schedule A/B), at p. 3.

**B.     MEP Is A Party In Interest In These Proceedings**

8.     MEP is 4D LLC's sole secured lender pursuant to an unconditional Secured Guaranty Agreement executed by 4D LLC in favor of MEP (the "Guaranty") in connection with MEP's Senior Secured Loan and Security Agreement with Neon Media ("Loan Agreement"). *See* McKelvey Decl., ¶¶8-9 and Ex. F-G. Pursuant to the Guaranty, MEP has a lien against all of 4D LLC's assets, including 4D Inc. and 4D LLC's equity interests and attendant rights in Neon Machine and Centili. *See* McKelvey Decl., Ex. G. As of the Petition Date, MEP's claim was in the amount of $4,204,506.00. *See* MEP's Amended Proof of Claim (Doc. 9-3), attached as Ex. H, to the McKelvey Decl.

9.     Other than receiving a nominal amount of SHRAP Tokens pursuant to a Court-approved settlement agreement among MEP, 4D LLC, and Javarone (the "MEP Settlement) in connection with the partial settlement of the Adversary Proceeding (the "Partial Settlement"), MEP

---

[2] 4D LLC initiated an adversary proceeding against Neon Machine and its managers on February 22, 2024, captioned *The 4D Factory, LLC v. Mark Long et al.*, Adv. Pro. No. 24-01319 (MEW) (the "Adversary Proceeding" or "Adv. Pro."). 4D LLC seeks $136 million in damages in the Adversary Proceeding.

3

has not received any payments from 4D LLC since the Petition Date, and MEP's claim continues to accrue interest and attorneys' fees. *See* McKelvey Decl., ¶¶16-17 and Ex. N-O.

10. As of October 2, 2024, MEP's claim is approximately $5,541,130, inclusive of post-petition interest and fees.

C. **Debtors and Javarone Have Engaged In "Fraud, Dishonesty, Incompetence, and Gross Mismanagement" of Debtors' Operations and Assets**

  i. **Javarone Either Usurped A Corporate Opportunity Of 4D LLC To Receive 15 Million SHRAP Tokens Or Converted That Property From 4D LLC.**

11. In December 2021, Neon Machine provided 4D LLC (not Javarone) the opportunity to purchase 15 million SHRAP Tokens and sent 4D LLC a proposed purchase agreement to memorialize the contemplated transaction. *See* McKelvey Decl., ¶8 and Ex. F.

12. Notably, 4D LLC (not Javarone) entered into an agreement with MEP on or around December 2, 2021 pursuant to which 4D LLC assigned 1% of its forthcoming SHRAP Tokens to MEP "as a ***material inducement*** to [MEP] to enter into the Secured Loan and Security Agreement and the Guarantee [of the same date] …" *See* Letter Agreement attached to McKelvey Decl., Ex. K, at p. 1. (emphasis supplied).

13. Neon Machine confirmed that the SHRAP Token transaction was intended to convey 15 million SHRAP Tokens to 4D LLC (not Javarone) in its capitalization table dated February 10, 2022, which noted that 15 million of SHRAP "advisor" tokens were reserved for 4D LLC (not Javarone). *See* Neon Machine Capitalization Table attached to McKelvey Decl. as Ex. L.

14. Despite this unambiguous documentation indicating that the SHRAP Tokens were to be provided to 4D LLC, the SHRAP Tokens were ultimately provided to 4D LLC's managing member, Javarone, in his personal capacity, rather than to 4D LLC.

4

15. On February 14, 2022, Mark Long, the Chief Executive Officer of Neon Machine, informed Javarone that Neon Machine had "granted [him] 15M tokens as an advisor and 1M as a board director." *See* Email from Mark Long to Javarone dated February 14, 2022, attached as <u>Ex. M</u> to McKelvey Decl.

16. 16 million SHRAP Tokens (the 15 million tokens for 4D LLC plus 1 million tokens to Javarone as a director) were released to Javarone pursuant to the MEP Settlement and Partial Settlement, subject to MEP and the Debtors' reservation of rights "regarding any potential claims that those tokens should properly be considered the property of 4D or the 4D estate." *See* McKelvey Decl., <u>Ex. N</u>, p. 1 of Ex. A therein.

17. The Partial Settlement resulted in payment to Javarone in the form of SHRAP Tokens, while providing ***no consideration*** to the 4D LLC bankruptcy estate. *See* McKelvey Decl., <u>Ex. O</u>.

### ii. Under Javarone's Management, The Value of Debtors' Assets Have Substantially Diminished.

18. According to Debtors' counsel, on July 30, 2024, "following the continued threat of an involuntary liquidation being filed against Centilli Ltd. by certain of its trade creditors, the directors [including Javarone] placed Centili Ltd. Into a UK Administration procedure" (the "Centili Administration"). *See* McKelvey Decl., <u>Ex. P</u> (Spence Letter), p. 2.

19. Debtors did not advise MEP or make any filings with the Court about the Centili Administration before it took place.

20. Within 14 days of the Centili Administration having been commenced, substantially all of the assets of Centili were sold to Centili Group Limited (the "Buyer"), an entity owned by 4D LLC and Javarone, in exchange for the Buyer assuming £400,000 in secured debt that Centili

owed to 4D Management (yet another entity owned by Javarone), and the payment of £150,000 in cash consideration (the "Sale"). McKelvey Decl., Ex. P (Spence Letter), at p. 2.

21. Debtors did not previously advise MEP or make any filings with the Court that Javarone's entity, 4D Management had made a secured loan to Centili, placing Javarone's entity *ahead of* the 4D LLC bankruptcy estate (as the 100% stockholder of Centili) in any liquidation of Centili. Once again, like the Partial Settlement made only a few months earlier, the Centili Administration resulted in payment to Javarone (in the form of the Buyer's assumption of £400,000 in secured debt plus payment of a portion of the £150,000 cash consideration to Javarone's entity as secured lender), while providing *no consideration* to the 4D LLC bankruptcy estate. *See* McKelvey Decl., Ex. P (Spence Letter), at p. 2.

22. Just *four months prior* to the Centili liquidation, Centili's stock was valued by Javarone to be worth approximately $20 million. *See* McKelvey Decl., ¶7 and Ex. E.

23. Either the Sale reflects a substantial diminution in value of the bankruptcy estate's assets during the pendency of these proceedings while Debtors served as debtors in possession, i.e., a loss of more than $19 million, or Debtors wildly misrepresented the value of Centili's assets, and therefore 4D LLCs assets, to this Court.

24. In either case, 4D LLC and Javarone engaged in multiple insider transactions and do not appear to have sought to maximize the revenue to either Centili or 4D LLC in connection with the Sale.

25. Even more egregiously, Debtors did not seek approval of this Court, or provide prior notice to the Court or the creditors of three out-of-the-ordinary-course business transactions: (a) 4D LLC's consent to the Sale (in which 4D LLC participated as stockholder of *both* the seller

and Buyer); (b) 4D LLC's consent to the Centili Administration; or (c) 4D LLC's establishment of a new subsidiary (the Buyer) to buy the assets in the Sale.

### iii. Javarone and Debtors Have A History Of Bad Faith And Delay

*Breach of Fiduciary Duty Allegations Against Javarone*

26. After Debtors' bankruptcy proceeding commenced, but prior to the filing of the Adversary Proceeding, various Neon Machine stockholders filed a derivative lawsuit in the Delaware Court of Chancery against Javarone and other directors of Neon Machine (the "Delaware Action"). The plaintiffs in the Delaware Action alleged that Javarone, among others, had breached his fiduciary duties to the stockholders and company by failing to recognize the automatic conversion of certain Simple Agreements for Future Equity ("SAFEs") and unilaterally suspending the CEO and installing Javarone in his stead. *See* McKelvey Decl., Ex. I (c*l.*, C.A. No. 2023-1186-MTZ (Del. Ch. Nov. 27, 2023)).

27. Among the allegations against Javarone in the Delaware Action were that Javarone and the other directors "inflict[ed] tremendous financial, operational, and reputational harm" to Neon Machine.

28. While the Delaware action was voluntarily dismissed after the parties thereto agreed to submit their dispute to the jurisdiction of this Court, the Neon Machine shareholders that were the plaintiffs in the Delaware Action are among the defendants in the Adversary Proceeding and have re-asserted their claims in a third-party complaint against Javarone (among others) in the Adversary Proceeding. (Adv. Pro. Doc. 8).

*Misleading Representations In Petitions*

29. As mentioned above, 4D LLC valued its interest in Centili at $20 million only four months prior to agreeing to Sale in which all of Centili's assets were sold for less than $1 million. *See* Amended Schedules (Doc. 87).

30. Although 4D LLC claims to have only $600,000 in unsecured creditors (*see* Plan of Reorganization filed at Doc. 51, hereinafter "Plan," attached as Ex. D to McKelvey Decl., at p. 7), over $5,000,000 in unsecured proofs of claim were filed before the bar date (plus a proof of claim from the law firm Cadwalader in an "unknown" amount, which, from the supporting documentation, appears to be for approximately $700,000 depending on a number of factors). Thus, there is a total of $10 million in filed claims, including MEP's claim and assuming Cadwalader's claim is in the amount of $700,000.

*Failure to Seek Expeditious Resolution or Properly Administer the Bankruptcy Estate*

31. Debtors filed their Plan on January 8, 2024. However, Debtors have taken no steps in the ***last ten months*** to advance the Plan and, to date, have not noticed the Plan for confirmation. MEP does not consent to the Plan, which improperly impairs MEP's fully secured claim (all while incorrectly stating that MEP's claim is not impaired). MEP intends to object to the Plan (as filed) if noticed for confirmation. Moreover, the Plan is not confirmable for a number of reasons including that the Plan is not feasible. The Plan relies on the grossly overstated value of Centili, as well as the 4D LLC's success in the Adversary Proceeding, which 4D LLC has delayed in prosecuting.

32. The Debtors have also failed to file timely monthly operating reports. The last monthly operating reports filed for August 2024 were filed with this Court on October 4, 2024 (Docs. 123-124). Indeed, Debtors have been consistently late in filing their monthly operating reports – Debtors filed their January 2024 monthly operating reports in March 2024 (Docs. 83-84); their February 2024 monthly operating report in May 2024 (Docs. 102-103); their March 2024 monthly operating reports in May 2024 (Docs. 104-105); their April 2024 monthly operating reports in June 2024 (Docs. 110-111); their May 2024 monthly operating reports in July 2024

(Docs. 113-114); their June 2024 monthly operating reports in September 2024 (Docs. 119-120); and their July 2024 monthly operating reports in September 2024 (Docs. 121-122).

33. Moreover, Debtors have made or stipulated to multiple requests for extensions of filing deadlines in these cases. *See* Docs. 41, 55, 116.

34. Debtors have also stipulated to and made numerous requests for extensions and stays in the Adversary Proceeding (totaling approximately 4 months) in order to engage in settlement negotiations with no results except for proceeds being paid to Javarone directly. *See* Adversary Proceeding stipulations dated April 15, 2024, April 22, 2024, May 3, 2024, May 22, 2024, and June 24, 2024. *See* Adversary Proceeding Docs. 25, 28, 33, 40, and 41.

35. Debtors have also utterly failed to prosecute 4D LLC's alleged $100 million claims against Goal Acquisitions Sponsor Corp. ("Goal"). *See* McKelvey Decl., Ex. E (Amended Schedule A/B), at p. 6.

36. Given Debtors' and Javarone's breaches of fiduciary duties, bad faith, and dilatory conduct, the Motion should be granted.

### III. LEGAL ARGUMENT

**A. Legal Standard**

"Chapter 11 of the Bankruptcy Code is designed to allow a debtor-in-possession to retain management and control of the debtor's business operations." *In re Ashley River Consulting LLC*, 2015 WL 1540941 (Bankr. S.D.N.Y. Mar. 31, 2015) (internal citations omitted). "As such, a debtor-in-possession owes fiduciary duties to the bankruptcy estate and must, among other things, protect and . . . conserve property in [its] possession for the benefit of creditors and refrain[ ] from acting in a manner which could damage the estate, or hinder a successful reorganization of the business." *Id.* (internal citations and quotations omitted).

Pursuant to Section 1185(a) of the Bankruptcy Code, on request by a "party in interest" the Court "shall order that the debtor shall not be a debtor in possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case[.]" 11 U.S.C. § 1185(a)." 11 U.S.C. § 1185(a); *In re ComedyMX, LLC*, 647 B.R. 457, 462 (Bankr. D. Del. 2022) ("Section 1185 permits a court to remove the debtor from possession on a showing of cause[.]").

Section 1185(a) of the Bankruptcy Code provides a non-exhaustive list of conduct requiring removal of a debtor in possession. 11 U.S.C. §1185(a); *In re Duling Sons, Inc.*, 650 B.R. 578, 581 (Bankr. D.S.D. 2023). "[S]ufficient cause to remove a Subchapter V debtor as debtor in possession includes fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case ... or for failure to perform the obligations of the debtor under a plan confirmed under this subchapter." *In re No Rust Rebar, Inc.*, 641 B.R. 412, 422-23 (Bankr. S.D. Fla. 2022) (internal quotations and citations omitted). "[A] manifest demonstration that management is unable to conduct itself as an appropriate fiduciary for the bankruptcy estate is also 'cause' to dispossess the debtor under § 1185." *In re ComedyMX, LLC*, 647 B.R. at 465 (finding good cause to remove Subchapter V debtor in possession).

The standard for removal of a Subchapter V debtor in possession is akin to the standard used by bankruptcy courts to appoint a trustee in non-Subchapter V Chapter 11 cases. Indeed, "[b]ecause § 1104(a) and § 1185(a) use the same language, the court may rely on authority construing § 1104 in determining whether to remove a debtor in possession under § 1185." *In re Neosho Concrete Prod. Co.*, No. 20-30314, 2021 WL 1821444 (Bankr. W.D. Mo. May 6, 2021) (citing *In re Peak Serum, Inc.*, 623 B.R. 609, 614 n.1 (Bankr. D. Colo. 2020)).

"If a debtor is removed as debtor in possession, the Subchapter V Trustee's duties are expanded under section 1183(b)(5) to include, amongst other duties, "operating the business of the debtor." *In re Corinthian Commc'ns, Inc.*, 642 B.R. 224, 233 (Bankr. S.D.N.Y. 2022) (*citing* 11 U.S.C. § 1183(b)(5)).

MEP respectfully submits that good causes exists here to remove Debtors as debtors in possession and to enlarge the current subchapter V trustee's duties and responsibilities under 11 U.S.C. § 1183(b)(5) to include assuming the day-to-day duties to operate Debtors.

**B.    Debtors' Managing Member, Javarone, Has Repeatedly Participated In Self-dealing And Conflicted Transactions.**

Courts have found cause for removal where major stakeholders have "serious concerns about the existence of conflicts of interest and the DIP's ability to act as a fiduciary for the Debtor's bankruptcy estate." *In re Duling Sons, Inc.,* 650 B.R. 578, 581 (Bankr. D.S.D. 2023). "In addition to the causes provided under § 1112(b)(4) and § 1185(a), bankruptcy courts have frequently identified other factors that support a finding of cause, including where the debtor in possession has a conflict of interest in properly investigating and pursuing potential fraudulent transfers and other claims of the estate." *In re No Rust Rebar, Inc.*, 641 B.R. 412, 422-23 (Bankr. S.D. Fla. 2022) (internal citations and quotations omitted).

Here, Javarone, as the principal of the Debtors, has participated in a slew of conflicted transactions and self-dealing, which should prevent him from acting as a fiduciary to the estate's creditors. First, although 4D LLC was originally offered 15 million SHRAP Tokens by Neon Machine, Javarone ultimately ended up taking these tokens for himself, usurping the opportunity from 4D LLC.  Moreover, 4D LLC had previously pledged these SHRAP Tokens to MEP as a "material inducement" for MEP to enter into the Loan Agreement and Guaranty. Thus, by taking the SHRAP Tokens for himself, Javarone also diverted the collateral for MEP's loan. Even when

11

4D LLC brought a claim regarding the SHRAP tokens against Neon Machine (and others), Javarone partially settled the claim with Neon Machine by receiving 16 million tokens for *himself*, and *none* for 4D LLC.

Second, Javarone negotiated the out-of-court Sale of the assets of Centili through the Centili Administration, which resulted in Javarone's management company receiving the cash proceeds from the sale (after costs of administration) and Javarone's management company having its secured debt assumed by the Buyer. Although 4D LLC owns 99% of the Buyer, the secured claim of Javarone's management company is ahead of 4D LLC's equity interest in the Buyer. Additionally, Javarone caused Centili to sell its assets in this self-dealing transaction for less than 1/20th of value those assets ascribed by Javarone only four months earlier. These self-dealing acts and conflicts of interest should preclude Javarone and the Debtors from continuing to act as fiduciaries to the bankruptcy estate's creditors, including MEP, and thus, the Debtors must be removed as the debtors-in-possession.

C.  **The Debtors' Managing Member, Javarone, Has Also Grossly Mismanaged And Caused Severe Diminution of The Debtors' Assets.**

Javarone's gross mismanagement of the Debtors' assets warrants a for "cause" removal of the debtors-in-possession. As stated above, a debtor-in-possession "owes a fiduciary duty to its creditor" and "[g]ross mismanagement of the estate is a breach of that duty." *In re Ozcelebi*, 639 B.R. 365, 388 (Bankr. S.D. Tex. 2022) (internal citations omitted). A debtor's mismanagement must be "beyond all reasonable measure." *Id.* (internal citations omitted). While a "variety of conduct can establish gross mismanagement[,]" courts have found that failing to maximize estate assets and failure to provide the court an "accurate financial picture of the debtor-in-possession" can qualify as "gross mismanagement." *Id*. (citing *In re Fall*, 205 B.R. 863, 869 (Bankr. N. D. Ohio 2009)).

Javarone and the Debtors have grossly mismanaged one of 4D LLC's key assets: Centili. In March 2024, Centili was valued by Javarone and 4D LLC at $20 million. Four months later, on July 30, 2024, Javarone entered Centili into UK administration because it faced "involuntary liquidation." Javarone and 4D LLC subsequently approved and participated in a rushed inside asset sale pursuant to which the Buyer, Centili Group (of which Javarone is also a director) purchased Centili's assets for £150,000 in total cash consideration, plus the assumption of £400,000 in secured debt held by Javarone's management company.

This over $19 million diminution in value under the guidance of Javarone is colossal – especially when Javarone's status as a director of the Buyer, Centili Group and a shareholder of Centili create a conflict of interest, further impeding his ability to act as a fiduciary of the estate. *In re Duling Sons, Inc.*, 650 B.R. at 581 (Bankr. D.S.D. 2023). Javarone and Debtors are not "maximizing" the value of any of the estate's assets – they are mismanaging them, causing losses in millions.

Further, Javarone and the Debtors failed to timely disclose to any interested parties, this Court, or its creditors: (a) the steep decline in value of Centili; (b) the UK administration of Centili; or (c) the asset sale to Centili Group until after these events occurred. 4D LLC's gross mismanagement of Centili's assets, along with its failure to disclose the diminution of the assets and inside sales warrant for "cause" removal of Debtors as debtors in possession.

**D.     The Debtors' Managing Member, Javarone, Has Failed To Adequately Or Timely Administer the Bankruptcy Estate.**

Throughout the process of this bankruptcy proceeding, the Debtors, under the leadership of Javarone, have repeatedly failed to expeditiously or adequately administer the Debtors' estates, violating their fiduciary duties as debtors in possession. Despite the passage of many months,

Debtors have failed to confirm the Plan (or even notice it for confirmation). Debtors have no excuse for this protracted delay.

Debtors have also delayed in the expeditious resolution of the Adversary Proceeding and failed to pursue their $100 million claim against Goal. 4D LLC paused its pursuit of the $136 million Adversary Proceeding for four months, ostensibly to discuss settlement. To date, however, the only settlement put on the record has been the Partial Settlement in which Javarone received 16 million in SHRAP Tokens from Neon Machine and Debtors received nothing. Rather than administer the estate in a manner that would actually benefit the Debtors, the bankruptcy estate has been mismanaged to solely benefit Javarone.

Moreover, Debtors have failed to timely file its monthly operating reports. Pursuant to 11 U.S.C. § 308(b) and Federal Rule of Bankruptcy 2015(a)(6), monthly operating reports are required to be filed no later than 21 days after the last day of the calendar month following the month covered by the report. The Debtors have consistently failed to comply with this requirement.

Debtors' failure to update the Court and interested parties on its post-petition financial information in a timely matter further supports MEP's Motion for Debtors to be removed as debtors in possession for cause. "Timely and accurate financial disclosure is the life blood of the Chapter 11 process." *In re Peak Serum, Inc.*, 623 B.R. 609, 631 (Bankr. D. Colo. 2020) (internal citations omitted). "Because monthly operating reports enable creditors to stay informed about a debtor's post-petition operations, untimely and inadequate monthly operating [reports] may be so useless as to be the practical equivalent of a failure to file any operating [report] at all." *Id.* (citing *In re Ronald Kern & Sons*, No. 01-BK-12835K, 2002 WL 1628908, at *2 n.3 (W.D.N.Y. June 11, 2002)) (internal quotations omitted).

The conduct of Debtors mandates their immediate removal as debtors in possession and a corresponding expansion of the Subchapter V Trustee's duties.

## IV. CONCLUSION

For the foregoing reasons, MEP respectfully requests that the Court enter the [Proposed] Order, attached hereto as **Exhibit 2**, removing the debtor in possession pursuant to 11 U.S.C. § 1185 and granting such other relief as may be deemed just and proper.

Dated: October 9, 2024

REITLER KAILAS & ROSENBLATT LLP
Attorneys for MEP Capital Holdings III, L.P.

By: */s/ Lauren Friend McKelvey*
Lauren Friend McKelvey*
Reitler Kailas & Rosenblatt LLP
11921 Freedom Drive, Suite 550
Reston, Virginia 20190
Tel.: (212) 209-3037
E-mail: lmckelvey@reitlerlaw.com

*admitted pro hac vice

Julie B. Wlodinguer
885 Third Avenue, 20th Floor
New York, New York 10022
Tel: (212) 209-3050
Fax: (212) 371-5500
Email: jwlodinguer@reitlerlaw.com